HELEN MAGNUSON, PETITIONER-DEFENDANT, v. GEORGE PETERSON, INC., RESPONDENT-PROSECUTOR.

Argued October 3, 1944—Decided November 6, 1944.

Before Justices CASE, BODINE and PORTER.

For the petitioner-defendant, *Robert H. Wall* (*Edward A. Markley* and *Patrick F. McDevitt,* of counsel).

For the respondent-prosecutor, *James J. Skeffington* (*Walter A. Beers,* of counsel).

The opinion of the court was delivered by

PORTER, J. This case is before us on *certiorari* to review a judgment of the Hudson County Court of Common Pleas in a compensation issue. The workman, John Magnuson, was employed as a carpenter by George Peterson, Inc., the respondent, and while so employed suffered from general septicemia and cellulitis due to streptococcus infection from which he died about six days after being stricken. He left a widow and two small children.

It is claimed that he was involved in two accidents which arose out of and in the course of his employment. Claim petitions were filed in the Workmen's Compensation Bureau

for each alleged accident. The first petition claimed that on March 31st, 1939, he fell and received an injury to his left shoulder. This accident was reported to the employer, and medical treatment was furnished by it. The injury was a minor one, and the deceased lost no time from work. The Bureau dismissed this petition, and that disposition is not questioned. The second petition claimed an accident on May 18th, 1939, in which it was alleged that Magnuson "got a sliver in his arm which was injured in an accident on March 31st, 1939. Infection resulted in his death." He died on May 24th, 1939. Two questions are in dispute on this claim, first, whether in fact such an accident occurred and second, whether it was reported to the employer or came to its knowledge within the statutory period of ninety days. *R. S.* 34:15–17. The Deputy Compensation Commissioner who heard the case concluded in a careful review of the testimony that the petitioner had not sustained the burden of proof of an accident or of notice to the employer. In his findings he summarized the testimony as follows:

"The evidence presented was that of the widow and mother, who testified that the petitioner did have this injury to the shoulder, of which there seems to be no question, and on May 19th, the petitioner was complaining of his shoulder. On May 20th, they noted a small pimple on the decedent's elbow, which became infected. From the death certificate and the medical proof, I am satisfied that the death was the result of this infection, causing a virulent steptococcus germ, which caused the petitioner's death.

"The issue in this case is whether this condition was the result of an accident arising out of and in the course of his employment, and I have taken testimony on that point and have carefully considered it.

"From the evidence I am forced to find that the petitioner has not sustained the burden of proving that this infection was the result of an accident in his employment. The entire record is barren of any evidence of an accident wherein the petitioner got a splinter in his elbow. We have the testimony of one Flocksen (Flodstrom), who testified that sometime in May he remembers working with the petitioner, and that

while putting a panel on the second story before noon, he doesn't know the date, 'while picking up a panel it slipped, the panel slid down. I was on one end, the decedent held the other end, and it slipped out of his hands.' That is the only evidence I have of any accident from that witness.

"I have the testimony of Peter Knudsen (Knutsen), who testified that on May 18th, he was employed by the respondent as a carpenter-steward, and he checked the men and reported accidents for them. He further testified that on that day he saw no accident, but that he looked at the petitioner's arm and saw a bruise on the elbow, it was scraped. That was on May 18th.

"Then we have the testimony of Dr. Anthony Watman, who was the treating physician for the shoulder condition, and who saw the petitioner on the 19th, and examined the arm, and he found no such condition.

"Commenting further on the testimony, I may say that I was not impressed with the testimony of the witness Knudsen. (Knutsen.)

"Therefore, I find that I must dismiss this case, first, because the petitioner has not sustained the burden of proving that any accident the decedent may have received arose out of the course of his employment; and, secondly, the evidence contains no proof that the respondent had the required notice or knowledge of the alleged accident within the prescribed time."

This determination was appealed to the Common Pleas Court and resulted in a reversal. There was no opinion filed, but the court stated in a letter to counsel "that the death of the employee resulted from an accident arising out of and in the course of his employment" and "that the employer had notice of this accident through the employee's immediate superior, Nils Ragner Flodstrom (carpenter-steward)." The court evidently meant Knutsen and not Flodstrom, because Knutsen was the shop steward and Flodstrom a fellow worker. Knowledge to a fellow worker is not knowledge to the employer.

The Deputy Compensation Commissioner who heard the case and observed the witnesses was better able to evaluate

the testimony than a reviewing court is from a mere reading of the testimony. His conclusions, therefore, are entitled to considerable weight. It seems to us that the conclusions he reached were fully justified by the proofs.

It appears that four hearings were conducted from December 26th, 1940, to April 24th, 1941, after which the attorney for the petitioner seems to have abandoned the case. When an attempt was made by the employer to have the case dismissed for lack of prosecution, another attorney appeared and new witnesses were produced at hearings held on December 10th, 1942, and January 14th, 1943. At the first of these hearings which, it will be noted, was about three and one-half years after the time of the alleged accident, Mr. Knutsen appeared. He testified that he was employed as a carpenter-steward and that he checked the men and reported accidents for them, that while he did not see an accident on May 18th, 1939, he did have a conversation with the deceased and observed his elbow. He said it was bruised and scraped. Notwithstanding the fact that he was told not to repeat conversations that he had with the deceased, he did say that the deceased complained of a splinter. Although Knutsen said it was part of his duty to report accidents, he did not report this one. The employer, on the other hand, produced Mr. Dealaman who testified that he was employed by the respondent and that the deceased was under his supervision and that he had reported to him about the accident of March 31st, 1939, stating that he had struck his left shoulder against a column, but that there was no report to him of an accident on May 18th, 1939, or of his having been injured by a splinter or otherwise. He further testified that reports of accidents came to him and that he had no recollection of ever having received reports of accidents from any shop steward. If it be true that there was an accident on May 18th and that Knutsen had knowledge of it and saw the bruise and scrape and further assuming that it was his duty to report accidents to the employer, as he says, the fact that he did not do so seems to us a circumstance which raises a doubt of his veracity. However that may be, we do not think that Knutsen's knowledge of an accident is attributed to the employer. His position of shop

steward was not one representing the employer such as a fore-
man in authority over the workmen. He was rather a repre-
sentative of the trade union. Webster's International Dic-
tionary defines a shop steward as "Trade Unionism. A shop
deputy." *Cf. State* v. *Dyer* (*Vt.*), 32 *Atl. Rep.* 814.

At the last hearing on January 14th, 1943, there was pro-
duced as a witness Mr. Flodstrom, a fellow workman of the
deceased, who testified that he recalled while working with
him in May of 1939, in handling a piece of plywood together
that it slipped out of the hands of Magnuson. He testified
of no specific injury which deceased suffered at that time but
said that he did notice later that day that he had difficulty in
performing his work.

The testimony of the widow was that the deceased came
home from work ill in the late afternoon of May 18th, 1939.
That evening she examined his left arm and said that she
saw for the first time that his elbow was sore, that there was
a pimple on it and that thereafter it became festered and
swollen. She had testified that the injury of March 31st
did not cause any cuts or breaking of the skin.

The doctor who was treating the deceased for injuries he
received in the March 31st accident testified that he had not
observed at any time any injury to the elbow. None of the
doctors at the hospital who treated him from May 19th until
his death testified to the presence of any splinter in the elbow.
The only suggestion of a splinter is in the remark made by
Knutsen that the deceased complained of a splinter. Of
course that was not evidential and cannot be considered. The
death certificate, which was introduced in evidence, gave the
cause of death as "general septicemia and cellulitis of the
arm following accidental penetrating wound by a piece of
wood." This certificate was signed by the county physician
and not by any of the attending physicians in the hospital,
none of whom testified that there was a penetrating wound
or splinter. Therefore, the death certificate containing this
hearsay statement can have no evidential value on the cause
of death. *Aitken* v. *John Hancock Mutual Life Insurance
Co.,* 124 *N. J. L.* 58.

A careful analysis and weighing of the testimony brings

us to the conclusion, and we so find, that the testimony does not establish the occurrence of an accident arising out of and in the course of the deceased's employment which occasioned his death, or that there was any notice given to the employer of any such accident or that it had knowledge of same within the statutory period of ninety days.

The judgment under review will therefore be reversed, with costs.