21 N.J. Super. 357 (1952)
91 A.2d 268
MAX ATAMANIK, ROSE ATAMANIK, ADMINISTRATRIX, PETITIONER-RESPONDENT, AND APPELLANT,
v.
REAL ESTATE MANAGEMENT, INC., RESPONDENT-APPELLANT, AND RESPONDENT.
ROSE ATAMANIK, PETITIONER-RESPONDENT, AND APPELLANT,
v.
REAL ESTATE MANAGEMENT, INC., RESPONDENT-APPELLANT, AND RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued July 14, 1952.
Decided September 11, 1952.
*360 Before Judges SMALLEY, PROCTOR and HANEMAN.
Mr. Louis G. Morten argued the cause for appellant.
Mr. Henry M. Grosman argued the cause for the respondent (Mr. Isidor Kalisch on the brief).
HANEMAN, J.S.C.
The appellant employer, Real Estate Management, Inc., appeals herein from a judgment entered in the Hudson County Court against it relative to two petitions filed by Rose Atamanik, one in her individual capacity, and the second as administratrix of Max Atamanik, for compensation resulting from injuries sustained by the said Max Atamanik on February 26, 1945, allegedly arising out of and in the course of his employment. One petition seeks the payment of necessary medical bills, etc., during the said Max Atamanik's lifetime, and the other seeks compensation for the dependent widow because of his death.
Rose Atamanik, individually and as administratrix of the estate of Max Atamanik, cross-appeals from said judgment for the reasons that (1) the award was not predicated upon "wages received at the time of the injury"; (2) it made no allowance for interest on payments withheld for temporary disability; (3) the attorney was denied the right to be heard upon the allowance of attorney's fees; (4) the fee allowed the attorney for services rendered before the Workmen's Compensation Bureau and before the Hudson County Court was not reasonable; (5) the sum of $250 for funeral expenses was not allowed, and (6) the motion to open the amended judgment of November 7, 1951 was denied.
*361 The facts in connection herewith are as follows:
Max Atamanik had been employed by Real Estate Management, Inc. for upwards of 15 years prior to his death, as a general porter. Part of his duties was to distribute toilet paper to the various lavatories in the building in which he worked. On February 26, 1945 he was taken to the eighth floor of said building in an elevator, operated by one Joseph Zorowski, with a box of toilet paper. Some 15 minutes later, the elevator operator, as a result of being summoned to the seventh floor by a female employee of one of the offices located in said building on said floor, discovered the said Max Atamanik lying at the foot of a walled-in stairway leading from the seventh to the eighth floor, with the upset box in which he had been carrying the toilet paper, and rolls of said toilet paper, scattered about in the vicinity. In answer to Zorowski's question, "What's the matter?" the said Max Atamanik replied that he had slipped on the stairway. Thereafter the elevator operator lifted him up and sought the aid of the building superintendent, Joseph Aliano. The said superintendent summoned a doctor and produced a chair upon which he sat the porter. An ambulance arrived and removed the decedent to a hospital.
The medical testimony discloses that the said Max Atamanik suffered from an inter-trochanter peri-fracture of the right femur right below the neck. The immediate cause of his death was a complicating pneumonia, and the more remote causes of his death were a toxemia which arose out of a large bedsore that was present during most of the time he was in the hospital. He was dehydrated and the intertrochanteric fracture was operated on, and subsequently thereto he developed an osteomyelitis at the site of the fracture.
The said Zorowski testified that he had seen Max Atamanik every day during the period of three years that the former had been employed as an elevator operator and had never known him to experience a dizzy spell. He classified him as a "tough man" who * * * "could do anything."
*362 At the time of the original hearing, Joseph Aliano, the manager of the building, as petitioner's witness, testified that when he spoke to Max Atamanik at the location at which the latter was found, and asked him what was wrong, the latter replied, "I am dizzy." This testimony was given on July 29, 1948. For some reason the matter was then continued to July 6, 1949, when Joseph Aliano was called as a witness for Real Estate Management, Inc. He then testified that Max Atamanik said, "I had a dizzy spell and fell." Both Zorowski and Aliano admitted that the decedent was in agony up to the time he was removed to the ambulance and seemed unable to move without assistance.
The sole question involved on the appeal of Real Estate Management, Inc. is whether the injury sustained by Max Atamanik arose out of and in the course of his employment. The appellant contends that the primary cause of the accident was the dizzy spell suffered by the said Max Atamanik upon the stairs, and hence not compensable. The appellant objects to the admission of the statement made by the said Max Atamanik to Joseph Zorowski as to the cause of the accident. If admissible at all, this statement must be part of the res gestae. Appellant strenuously argues that the lapse of time (15 minutes) intervening between the delivery of the decedent to the eighth floor and the discovery of the decedent on the seventh floor is too lengthy to permit the statement to be considered a part of the res gestae. It is to be remembered that the maximum elapsed time was 15 minutes, during which the decedent was not seen by any witness. The decedent had apparently discharged the duties required of him on the eighth floor and then had proceeded down the stairs to the seventh floor. This, of necessity, required some time, and the period thereafter intervening between the accident and the statement to Zorowski was something less than 15 minutes. The test for such statements has been repeatedly pronounced by our courts.
In Andricsak v. National Fireproofing Corp., 3 N.J. 466 (1950), the court said as follows:
*363 "While the time elapsing between the act and the declaration is not of itself the controlling feature, the act must be so naturally and strongly connected as to impress upon the statement the element of truth; the declaration must be made without any element of artificiality; it must be made naturally and not too distant in point of time so that by its very quality and texture it tends to disclose the truth."
In Riley v. Weigand, 18 N.J. Super. 66 (App. Div. 1952), the court said as follows:
"The term `res gestae' means things done in and about as a part of the transaction on which the litigation in hand is based, or matters incidental to the main facts and explanatory thereof, including acts and words which are so closely connected therewith as to constitute parts of the transaction and without the knowledge of which the main facts might not properly be understood; and, as it is used in the law of evidence, the term more particularly signifies those circumstances which are the undesigned incidents of a particular litigated act, and which may be shown in evidence as explanatory of such act or as showing a motive for acting. Before admitting an utterance as a part of the res gestae, the trial judge must decide the preliminary question of whether the declarant has had any opportunity for deliberation and reflection, or whether the utterance was a spontaneous one, 9 Blashfield's Cyclopedia of Automobile Law and Practice, part 2, sec. 6251, pp. 714, 715. The matters for him to consider are the element of time, the circumstances of the accident, the mental and physical condition of the declarant, the shock produced, the nature of the utterance, whether against the interest of the declarant or not or made in response to questions or involuntary, and any other material facts in the surrounding circumstances. These matters are all to be weighed in determining the basic question, whether the utterance was spontaneous and unreflective and made under such circumstances as to indicate absence of opportunity for contrivance and misrepresentation. In determining what is or what is not admissible under the res gestae rule, the element of time is important, but not controlling. The controlling requirement is that the act or declaration be a spontaneous thing, springing out of the transaction in question itself, before there has been time for deliberation or reflection. To be admissible as parts of the res gestae, expressions of the actors made during an occurrence should be spontaneous and caused by the event. If made after the occurrence, no matter how shortly, and if there is an attempt to explain the event or defend one's self, they are inadmissible. Blashfield's Cyclopedia of Automobile Law and Practice, supra, at pp. 715, 716, 720. Cf. Robertson v. Hackensack Trust Co., 1 N.J. 304, 311, 314 (1949)."
*364 In weighing all of the facts and matters in the case sub judice to determine whether the utterance was spontaneous and unreflective, and made under such circumstances as to indicate absence of opportunity for contrivance and misrepresentation, having in mind the physical condition and agony in which the decedent was discovered, the conclusion is reached that the statement was spontaneously made before time for deliberation or reflection.
It is therefore here held that the statement was part of the res gestae and properly admitted.
In addition, in view of the fact that the decedent was a vigorous, healthy, "tough" man 64 years of age, who had, as far as the testimony disclosed, never suffered any dizzy spells, the conclusion that he slipped on the stairs is a probable or more probable hypothesis, with reference to the possibility of other hypotheses.
In Hercules Powder Co. v. Nieratko, 113 N.J.L. 195 (Sup. Ct. 1934), affirmed 114 N.J.L. 254 (E. & A. 1934), the court said as follows:
"In civil cases it is sufficient if the circumstantial evidence be such as to afford a fair and reasonable presumption of the facts inferred. Circumstantial or presumptive evidence, as a basis for deductive reasoning in the determination of civil causes, is a mere preponderance of probabilities. All that is required is that the claimed conclusions from the offered fact must be a probable or a more probable hypothesis, with reference to the possibility of other hypotheses. The test is probability rather than certainty."
It is therefore here held that the finding of the Hudson County Court that the accident, which caused the death of Max Atamanik, arose out of and in the course of his employment by Real Estate Management, Inc., is affirmed.
This leaves for consideration the appeal of Rose Atamanik, individually and as administratrix of the estate of Max Atamanik. The several bases for her appeal will be considered in the order above set forth.

*365 I

THE AWARD WAS NOT PREDICATED UPON "WAGES RECEIVED AT THE TIME OF THE INJURY"
Rose Atamanik here argues that in spite of the fact that Max Atamanik's base pay was $22 per week, the fact that the testimony disclosed that he received overtime payments should have been considered in determining the base pay. There is absent any testimony that in addition to the base pay of $22 per week there was any agreement that overtime was guaranteed. The Hudson County Court therefore properly computed the amount awarded for temporary disability, and its judgment is in this respect affirmed.

II

MADE NO ALLOWANCE FOR INTEREST ON PAYMENTS WITHHELD FOR TEMPORARY DISABILITY
There is nothing in the record which discloses that the Hudson County Court abused its discretion in refusing to add interest to the amount awarded. There is nothing in the record to cast upon Real Estate Management, Inc. the onus of having delayed the trial of this cause for the period of time which it took for its final consummation. Justice does not demand that interest be here allowed. The judgment is in this respect affirmed.

III

THE ATTORNEY WAS DENIED THE RIGHT TO BE HEARD UPON THE ALLOWANCE OF ATTORNEY'S FEES

*366 IV

THE FEE ALLOWED TO THE ATTORNEY BY THE HUDSON COUNTY COURT FOR SERVICES RENDERED BEFORE THE WORKMEN'S COMPENSATION BUREAU AND BEFORE THE SAID HUDSON COUNTY COURT WAS NOT A REASONABLE FEE
There is nothing in the record which discloses an abuse by the Hudson County Court in refusing Rose Atamanik's counsel a further hearing upon the allowance of attorney's fees, and the attorney's fee as so allowed by the Hudson County Court was reasonable under all of the circumstances. The judgment is in this respect affirmed.

V

THE HUDSON COUNTY COURT DID NOT ALLOW THE SUM OF $250.00 FOR FUNERAL EXPENSES
L. 1945, c. 74, which increases the allowance for funeral expenses from $150 to $250 provides by section 20 that it "shall apply to accidents on and after January 1, 1946." The accident having occurred on February 26, 1945, the statute is not applicable and the judgment is in this respect affirmed.

VI

THE HUDSON COUNTY COURT DENIED HER MOTION TO OPEN THE AMENDED JUDGMENT OF NOVEMBER 7, 1951
The Hudson County Court did not abuse its discretion in denying the motion to open the judgment of November 7, 1951, and the judgment is in this respect affirmed.