79 N.J. Super. 249 (1963)
191 A.2d 212
DOLORES McALLISTER, PETITIONER-APPELLEE AND APPELLANT AND CROSS-RESPONDENT,
v.
BOARD OF EDUCATION, TOWN OF KEARNY, RESPONDENT-APPELLANT AND RESPONDENT AND CROSS-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 24, 1962.
Reargued March 18, 1963.
Decided May 23, 1963.
*251 Before Judges CONFORD, GAULKIN and KILKENNY.
Mr. Henry G. Morgan argued the cause for the Board of Education at the original argument (Messrs. Schneider, Lustbader & Morgan, attorneys).
Mr. Robert J.C. McCoid argued the cause for the Board of Education at the reargument (Messrs. Schneider, Lustbader & Morgan, attorneys).
Mr. Aaron Gordon argued the cause for Dolores McAllister.
The opinion of the court was delivered by GAULKIN, J.A.D.
In this workmen's compensation case Mrs. McAllister, widow of Charles McAllister and mother of his three dependent children, appeals from that portion of the judgment of the County Court which determined that the amount of compensation for his death was governed by the statute which existed at the time of the accident, and not by the statute, which fixed a higher rate, in force when he died. The Board of Education of the Town of Kearny (Kearny) cross-appeals, claiming that the death was not work-connected. After the first argument in this case, we withheld decision pending the determination of Schiffres v. Kittatinny Lodge, Inc., 39 N.J. 139 (1963), which appeared to involve substantially *252 similar issues. Upon receipt of the opinion in Schiffres, we called for reargument in the light thereof.
The decedent had been employed by Kearny as head custodian of one of its schools for 24 years when, on October 25, 1952, he fell 10 to 14 feet from a ladder to the floor of the boiler room and was seriously injured. On May 15, 1955 the Division adjudged that he had sustained three fractured ribs, punctured pleura, and contusion, displacement and damage of the heart. The heart damage consisted of right bundle branch block, left ventricle hypertrophy and congestive heart failure. At that time the Division concluded that he was totally and permanently disabled, but it found that 25% of his disability was due to pre-existing arteriosclerosis and arthritic changes in his elbow. The Division did not say how much of the preexisting disability was due to each of the two conditions separately, but it did find as a fact that neither condition was aggravated or affected by the accident. The Division consequently awarded him 75% of total permanent.
Prior to the accident McAllister had worked steadily. After the accident he never worked again. He was treated by his family doctor, Dr. Kook, from the date of the accident until his death. Dr. Kook examined him periodically, the last time being September 18, 1957. McAllister died October 12, 1957. Dr. Kook testified that his diagnosis of severe myocardial damage with right bundle branch block, left ventricular hypertrophy, and congestive heart failure remained constant through his last examination; although he had not taken electrocardiograms after the award of the Division on May 15, 1955, he could tell from the symptomology that the condition was getting worse, and he anticipated the occurrence of McAllister's death at any time.
On October 12, 1957, almost exactly five years after the fall from the ladder, McAllister received a telephone call, about 1 A.M., that Mrs. McAllister was in a tavern with another man. He went to the tavern where he found his wife and the other man; there was a scene; he collapsed in the tavern about 1:45 A.M. and died a few minutes later.
*253 Kearny's brief states its position as follows: the injury sustained as a result of the 1952 fall was essentially healed; the condition of arteriosclerotic heart disease which preexisted the 1952 fall got progressively worse; the "traumatic emotional experience," superimposed upon the arteriosclerosis, killed him; and petitioner is therefore not entitled to recover. Schiffres v. Kittatinny Lodge, Inc., supra. Kearny appears to concede, as it must under Hagerman v. Lewis Lumber Co., 13 N.J. 315 (1953), that Mrs. McAllister is entitled to an award if the heart injury caused by the 1952 accident had not healed, and the "traumatic emotional experience," superimposed upon that injury, caused the death.
The Division and the County Court found that the 1952 heart injury had not healed; that, on the contrary, it had grown progressively worse, and that the "traumatic emotional experience" was merely the trigger that killed him. We have examined the evidence in the manner required by Russo v. United States Trucking Corp., 26 N.J. 430 (1958), and have come to the same conclusion. It seems to us that the case falls within Hagerman v. Lewis Lumber Co., supra, and not within Schiffres v. Kittatinny Lodge, supra.
In addition to Dr. Kook, petitioner called Dr. Saul Lieb. He had examined McAllister prior to the 1955 hearing in the Division. On the basis of that examination and a hypothetical question, Dr. Lieb attributed McAllister's death to the 1952 heart injury. He said McAllister's "condition deteriorated progressively, as evidenced by the observations of Dr. Kook, and his death * * * in my opinion represent[ed] the end result of that cardiovascular deterioration." In his opinion the underlying arteriosclerosis had little to do with the end result, even granting that (because McAllister was five years older) it probably had advanced somewhat beyond what it was in 1952.
Kearny attacks the validity and the competence of Dr. Lieb's opinion on the ground that the hypothetical question propounded to him failed to include the fact that Exhibit P-4, offered by petitioner to prove the fact of death, gave the *254 cause of death as "Arteriosclerotic Heart Dis." There is no substance in this attack.
To begin with, even if Exhibit P-4 were prima facie evidence that the death was due to arteriosclerosis, it would not be conclusive upon petitioner, or bar her from proving that the death was due to other causes. A fortiori where, as here, there is proof that the death was due to other causes, the cause stated in the death certificate did not have to be included in the hypothetical question posed by petitioner to Dr. Lieb. Peer v. Newark, 71 N.J. Super. 12, 21 (App. Div. 1961), certification denied 36 N.J. 300 (1962); Daggett v. North Jersey St. Ry. Co., 75 N.J.L. 630, 637 (E. & A. 1907).
Furthermore, Exhibit P-4 does not purport to be a copy of the entire original death certificate. It is a paper, signed by Rose L. Gibb, Registrar of Vital Statistics in Kearny, which says: "This is to Certify that the following is correctly copied from a record of Death in my office," followed by decedent's name, place and date of death, marital condition, occupation, and the above quoted cause of death.
We need not pause to determine whether any of the contents of such an abbreviation of a death certificate may "be received as prima facie evidence of the facts therein stated," under N.J.S. 2A:82-12, N.J.S.A. It is sufficient for present purposes to say it was not competent evidence of the cause of death.
R.S. 26:6-8, N.J.S.A. provides:
"In the execution of a death certificate, the personal particulars shall be obtained from the person best qualified to supply them. The death and last sickness particulars shall be supplied by the attending physician, or if there be no attending physician, by the county physician, or coroner. * * * Each informant shall certify to the particulars supplied by him by signing his name below the list of items furnished."
"[I]t is only the death certificate made in accordance with law that is prima facie evidence of the facts stated." Aitken *255 v. John Hancock Mutual Life Ins. Co., 124 N.J.L. 58 (E. & A. 1940); Magnuson v. Peterson, Inc., 132 N.J.L. 243, 247 (Sup. Ct. 1944). See also Talbott v. Wooster, 61 N.J. Super. 221 (Law Div. 1960). Exhibit P-4 contained no indication of the source of the information as to the cause of death, or that the original certificate had been signed by any of the persons mentioned in R.S. 26:6-8, N.J.S.A. Therefore it was not prima facie evidence of the cause of death.
Dr. Applebaum, who had also examined McAllister prior to the 1955 hearing in the Division, testified that in his opinion the death was due to the progress of the arteriosclerosis. However, the judge of compensation, after hearing and seeing the witnesses, accepted the testimony of petitioner's medical witnesses in preference to that of Dr. Applebaum, and the County Court did likewise. We perceive no reason to differ. We hold, therefore, that petitioner and her children are entitled to an award.
That brings us to the question whether the award should be based on L. 1956, c. 141, § 3, N.J.S.A. 34:15-13 in effect at the time of McAllister's death (as the judge of compensation held) or on the lesser rate fixed by the statute in force at the time of the accident (as the County Court held).
The parties agree that the only two New Jersey cases which have decided this question are Ermola v. Hudson Paint & Varnish Co., 70 N.J. Super. 76 (Essex Cty. Ct. 1961), which held that the statute in force on the date of the injury governs, and Goldmann v. Johanna Farms, Inc., 61 N.J. Super. 138 (Mercer Cty. Ct. 1960), which concluded that it is the statute in force at the date of death which governs. We shall occasionally refer to these holdings as the Ermola rule and the Goldmann rule.
We must first determine whether L. 1956, c. 141, itself indicates that the Legislature intended it to apply only to accidents happening after its enactment. Cf. Chambers v. Toohey, 187 A. 49, 14 N.J. Misc. 780 (Sup. Ct. 1936).
*256 Kearny argues that a statute must be construed prospectively unless it expressly provides otherwise, and, since this statute did not provide that it was to cover deaths due to pre-existing injuries, it must be held that it did not. Petitioner, on the other hand, argues that an earlier amendment of this statute, L. 1945, c. 74, provided that it was to "apply to any accident or compensable occupational disease occurring on or after January first, one thousand nine hundred and forty-six"; no such language was used in the later amendments made by L. 1953, c. 159, and said L. 1956, c. 141; therefore it must be concluded that the Legislature intended the 1953 and 1956 amendments to cover past as well as future accidents. In 1952 we held that the increased funeral allowance provided for by L. 1945, c. 74, could not be given to the widow of a worker who, though he died after January 1, 1946, was injured prior to that date. Atamanik v. Real Estate Management, Inc., 21 N.J. Super. 357 (App. Div. 1952). It may be that the limitation to future accidents expressed in L. 1945, c. 74, was dropped in the later amendments because the Legislature intended to avoid the holding in Atamanik.
It must be noted that L. 1956, c. 141, contained provisions of the type which the courts had held, prior to 1956, could not be applied to past accidents. For example, it increased the temporary and permanent disability benefits, and the scheduled payment for the loss of vision of an eye. On the other hand, the act contained provisions which obviously were intended to apply to previous accidents, as, for example, the provision enlarging the time for filing answers to claim petitions. Therefore, our view is that the Legislature intended that the statute apply to past as well as future accidents wherever legally possible.
As to the new death benefits fixed by L. 1956, c. 141, the statement annexed to the bill declared its purpose to be as follows:
*257 "Recognizing the fact that the compensation benefit rates now payable are out of proportion to meet the present cost of living both temporary and permanent benefits are increased accordingly by this bill.

* * * * * * * *
In the case of a widow who remarries prior to the expiration of the period of dependency, the present law prescribes that she shall forfeit the entire balance of benefits, whereas under this bill she will be entitled to receive the balance of benefits or $1,000.00, whichever is the lesser.
The increase in funeral allowance to $400.00 is to meet the present cost of that service.
The increase in the schedule of weeks from 300 to 350 payable under section 34:15-13 gives further aid to dependents as named therein. * * *"
In the light of that statement, and bearing in mind that the Workmen's Compensation Act must always be liberally construed in favor of the employee and his dependents, we hold that it was the intention of the Legislature to increase the benefits to dependents of a worker who died after the enactment of the statute, even if he died as a result of an injury sustained in an accident which happened before the enactment of the statute. Cf. Bower v. Metal Compounds Corp., 121 N.J.L. 421, 423 (Sup. Ct. 1938), affirmed o.b. 122 N.J.L. 380 (E. & A. 1939); Chambers v. Toohey, supra.
The question then is, is there any constitutional or other legal barrier to applying the statute in this fashion? We think not.
58 Am. Jur., Workmen's Compensation, § 301, p. 790, says:
"The amount of compensation which may be awarded to an injured employee is governed, ordinarily, by the law in force at the time of the injury. * * * The claims of relatives, dependents, or beneficiaries of the estate of a deceased employee, in so far as they are predicated upon the survival of the rights of the employee, are also governed, ordinarily, by the law in force at the time of the injury. But where the statute vests in the dependents or survivors of a deceased employee a new and independent right to compensation on account of his death, the amount recoverable is governed, ordinarily, by the law in force at the time of death."
See also 58 Am. Jur. § 73, p. 627.
*258 Our Workmen's Compensation Act does vest in the dependents "a new and independent right to compensation" on account of the employee's death. Lusczy v. Seaboard By Products Co., 101 N.J.L. 170, 173 (E. & A. 1925); Eckert v. New Jersey State Highway Department, 1 N.J. 474, 480 (1949); Kozielec v. Mack Manufacturing Corp., 29 N.J. Super. 272, 278 (Cty. Ct. 1953); 2 Larson, Workmen's Compensation Law, § 64.10, p. 123 (1961); Cf. Cureton v. Joma Plumbing & Heating Co., 38 N.J. 326, 335 (1962).
Although there is a split of authority on the subject in other jurisdictions (see 9 Schneider, Workmen's Compensation, § 1927, p. 74 (1950), and 1959 Cumulative Supplement, vol. 3, pp. 367-369; 99 C.J.S. Workmen's Compensation § 21c, pp. 138-140) we consider the above-quoted statement from American Jurisprudence to be sound. It states the rule followed in Goldmann v. Johanna Farms, Inc., supra. Good explanations of the rationale of this rule may be found in State ex rel. Jones & Laughlin Steel Corp. v. Dickerson et al., 160 Ohio St. 223, 115 N.E.2d 833 (Sup. Ct. 1953); Hirsch v. Hirsch Bros., 97 N.H. 480, 92 A.2d 402 (Sup. Ct. 1952); and Carroll v. State, 242 Minn. 70, 64 N.W.2d 166, 172 (Sup. Ct. 1954). See also Peterson v. Federal Mining & Smelting Co., 67 Idaho 111, 170 P.2d 611 (Sup. Ct. 1946); Muller v. Henry R. Apel Inc., 215 App. Div. 737, 212 N.Y.S. 879 (1925), affirmed o.b. 242 N.Y. 499, 152 N.E. 400 (Ct. App. 1926). Contra, In re Beausoleil's Case, 321 Mass. 344, 73 N.E.2d 461 (Sup. Jud. Ct. 1947); Quilty v. Connecticut, 96 Conn. 124, 113 A. 149 (Sup. Ct. Err. 1921); Preveslin v. Derby & Ansonia Developing Co., 112 Conn. 129, 151 A. 518, 70 A.L.R. 1426 (Sup. Ct. Err. 1930); Hecht v. Parkinson, 70 So.2d 505 (Fla. Sup. Ct. 1954); Collier v. Hope Coal Co., 269 S.W.2d 278 (Ky. Ct. App. 1954).
Kearny naturally relies upon Ermola and the cases therein cited. The basis of the holding in Ermola is that, in New Jersey, workmen's compensation is elective and therefore contractual; the employer may withdraw from the contract at any time upon 60 days' notice (N.J.S.A. 34:15-12), *259 but he can not escape liability to pay compensation for injuries already sustained or for death resulting therefrom; therefore, it would be an unconstitutional impairment of the contract between the employer and the employee to increase the rate of compensation for resulting death after the accident.
Although this argument has a certain logic and a beguiling symmetry, it seems to us that it does not withstand analysis.
Although the rights and liabilities of employer and employee under the Workmen's Compensation Act have been called "contractual in nature" (Miller v. National Chair Co., 127 N.J.L. 414, 417 (Sup. Ct. 1941), affrmed o.b. 129 N.J.L. 98 (E. & A. 1942), and "a definite statutory status or relationship which in essence is contractual," New Amsterdam Casualty Co. v. Popovich, 18 N.J. 218, 226 (1955), they are not truly contractual. Biglioli v. Durotest Corp., 26 N.J. 33, 40 (1958); Gotkin v. Weinberg, 2 N.J. 305 (1949). The courts have used the term "contract" in workmen's compensation cases much as they have used that term when speaking of marriage "contracts." In employment, like in marriage, the parties must agree to enter the relationship, but once they do the law dictates to them their rights and liabilities. And, as in marriage  within legal limitations having nothing to do with the impairment of contract  the law may change those rights and liabilities, not only at any time during the relationship but sometimes even after it has been terminated, as, for example, after the employee has stopped working for the employer because of an injury. Feinsod v. L. & F. Construction Co., 4 A.2d 692, 17 N.J. Misc. 65 (C.P. 1939), affirmed sub nom. Savitt v. L. & F. Construction Co., 123 N.J.L. 149 (Sup. Ct. 1939), affirmed, 124 N.J.L. 173 (E. & A. 1940); J.W. Ferguson Co. v. Seaman, 119 N.J.L. 575 (E. & A. 1938).
In Biglioli, supra, the worker was last exposed to beryllium before the statute made berylliosis compensable, but the worker did not become ill with berylliosis until after the statute was enacted. The court held he was entitled to compensation. *260 It is true that Biglioli had continued to work for Durotest until after the statute was adopted, but we are of the opinion that the result would have been the same even if that had not been the fact. So here, the accident caused injury to McAllister for which he was compensated in his lifetime. His death, in 1957, was a new and separate injury to his dependents and, as such, it was governed by L. 1956, c. 141.
The hollowness of the ring of "contract" becomes obvious when we tap it against the fact that the Compensation Act became binding upon employers and employees whose employment contracts antedated adoption of the act, in spite of the express terms of such contracts, and not by the action of the parties but by their inaction, Troth v. Millville Bottle Works, 89 N.J.L. 219 (E. & A. 1916); Sexton v. Newark Dist. Telegraph Co., 84 N.J.L. 85 (Sup. Ct. 1913), affirmed o.b. 86 N.J.L. 701 (E. & A. 1914); Gotkin v. Weinberg, supra; that the act is binding upon nonresident employers, even though the employee is a nonresident, was hired in a foreign state, the employer was never present in this State, and the workmen's compensation laws of the state of hiring provide different rights and coverage, Boyle v. G. & K. Trucking Co., 37 N.J. 104 (1962); cf. Cramer v. State Concrete Corp., 39 N.J. 507 (1963); and, at least until an injury, the parties are bound by even radical and substantive changes in the act made after the entry into the employment contract.
The net result of all this is that the workmen's compensation "contract" includes everything that the Legislature and the courts say it shall include, whether added before or after the injury. It is therefore arguing in a circle to seek what the "contract" includes and whether it has been impaired. The analogy to contract is often a handy aid for the analysis of a specific problem, just as a paper tube may sometimes be an aid to hearing, but "contract" no more accurately describes the rights and duties of an employer and an employee under the Workmen's Compensation Act than a paper tube corrects deafness.
*261 Finally, to such a "contract" the words of Chief Justice Hughes, uttered in Home Building & Loan Association v. Blaisdell, 290 U.S. 398, 428, 438, 54 S.Ct. 231, 236, 240, 78 L.Ed. 413 (1934), are especially applicable. In upholding the Minnesota mortgage moratorium law, he said "the prohibition [against impairment of the obligations of contract] is not an absolute one and is not to be read with literal exactness like a mathematical formula. * * * The question is not whether the legislative action affects contracts incidentally, or directly or indirectly, but whether the legislation is addressed to a legitimate end and the measures taken are reasonable and appropriate to that end."
Of course, no statute may take away vested rights. Pennsylvania Greyhound Lines, Inc. v. Rosenthal, 14 N.J. 372, 384 (1954). We think that is the true test of the validity of retroactive workmen's compensation statutes and not whether they impair an imaginary "contract." See Baur v. Common Pleas of Essex, 88 N.J.L. 128 (Sup. Ct. 1915); Erie Railroad Co. v. Callaway, 91 N.J.L. 32 (Sup. Ct. 1917); Hansen v. Brann & Stewart Co., 90 N.J.L. 444 (Sup. Ct. 1917); Klevinsky v. Lafferty, 122 N.J.L. 130 (Sup. Ct. 1939); Gianforte v. Crucible Steel Co. of America, 25 N.J. Super. 183 (Cty. Ct. 1953); Atamanik v. Real Estate Management, Inc., supra. (The citation of some of the older of these cases is not to be taken as an expression that we think they would be decided in the same fashion today.)
In short, we hold that no contract was impaired, and that Kearny did not have a vested right to pay compensation to McAllister's dependents, in the event of his death, only upon the basis of the statute in force when McAllister was injured.
It has been said that most cases which follow the Ermola rule have arisen in states which have an elective system of workmen's compensation, while the Goldmann rule has been followed in states in which workmen's compensation is compulsory. Schneider, Workmen's Compensation, 1959 Cumulative Supplement, vol. 3, supra, at p. 367. See also Travelers *262 Ins. Co. v. Toner, 89 U.S. App. D.C. 77, 190 F.2d 30 (D.C. Cir. 1951), cert. denied 342 U.S. 826, 72 S.Ct. 48, 96 L.Ed. 624 (1951); Penn Jersey Welding Co. v. Lowe, 183 F.2d 936 (3 Cir. 1950). Based upon this, it may be suggested that all states having elective compensation systems are compelled by the Federal Constitution, or their own, to follow the Ermola rule. Our examination of the cases satisfies us that there is no merit in this suggestion.
The New Hampshire cases of Cote v. Bachelder-Worcester Co., 85 N.H. 444, 160 A. 101, 82 A.L.R. 1239 (Sup. Ct. 1932), and Hirsch v. Hirsch Bros., 97 N.H. 480, 92 A.2d 402, 405 (Sup. Ct. 1952), afford an interesting demonstration of the lack of merit in such an analysis. New Hampshire is apparently an elective state. In Cote the New Hampshire Supreme Court followed the Ermola rule. In Hirsch the court pointed out that when Cote was decided the statute provided that "compensation due in case of death was payable to the `legal representative [of a decedent] for the benefit of [his] dependents'," but that thereafter the statute was changed to read "`If death results from the injury, the employer shall pay to, or for the dependent or dependents of the deceased employee * * * a weekly compensation * * *'," and hence Cote was no longer the law. The court held:
"The section indicates a legislative purpose to create in a dependent widow or child `a separate right of action for the loss resulting.' * * * It follows that the rights of the dependents are to be determined according to the law in force at the time the rights arose, namely, upon the death of the employee.
The death of Carl Hirsch occurred on July 6, 1951. Effective on the preceding July 1, the maximum amount payable on account of death was increased from $7,500 to $9,000. Laws 1951, c. 74. The decree awarded compensation at the rate of $25 per week, to be paid over a period of 300 weeks. Thus a maximum of $7,500 was provided. * * * The amendment of 1951, supra, which the Court ruled did not apply, retained the weekly maximum of $30, but increased the total maximum from $7,500 to $9,000. The decree should have been entered in accordance with the last amendment, and must be vacated."
*263 See also Rosell v. State Industrial Accident Commission, 164 Or. 173, 95 P.2d 726 (Sup. Ct. 1939). On the other hand, in Massachusetts the act is compulsory, yet Massachusetts holds that an increase in dependency death benefits does not apply to deaths due to injuries sustained before the passage of the statute. Beausoleil's Case, supra.
Even under a compulsory workmen's compensation act, the employer and employee may acquire vested rights of which they may not be deprived by retroactive legislation. If the extent of the obligation of the employer for resulting death became fixed at the time of the injury or accident, the employer could not be deprived of the right to stand upon that limitation, even under a compulsory system, and even though there was no "contract" to be protected against impairment. Therefore, when the courts in states in which the act is compulsory apply the Goldmann rule, they do so for the reason that the rights and liabilities of the employer to the dependents upon death do not become completely fixed at the time of the injury or accident, even though those who constitute the class from which the dependents will be chosen in the event of death may be closed at the time of the accident.
For the foregoing reasons, the judgment of the County Court is modified to provide for the payment of compensation as fixed by the Division. In all other respects, the judgment is affirmed.