41336. SYNALLOY CORPORATION v. NEWTON et al.
(326 SE2d 470)

</div>

WELTNER, Justice.

Former employees of Synalloy Corporation (formerly Augusta Chemical Company) filed suit in tort alleging, among other things, that Synalloy negligently exposed them to beta-napthylamine (BNA), a known carcinogen, and failed to warn them of the dangers of exposure. Two of the plaintiffs, Newton and Williams, were employed by Synalloy prior to 1971. The plaintiff Samuels was employed in 1972. None of the plaintiffs learned of the relationship between BNA and cancer until 1981, at which time suit was brought for physical and mental injuries.

Synalloy moved for summary judgment, claiming that the superior court of Richmond County lacked jurisdiction because the exclusive remedy was the occupational disease provision of the Workers' Compensation Act, OCGA § 34-9-280. The motion was denied. The Court of Appeals affirmed, holding that pre-1971 employees had a common law tort action against Synalloy, and that post-1971 employees were entitled to a jury determination of whether the injuries fall within the definition of an occupational disease. *Synalloy Corp. v.*

*Newton,* 171 Ga. App. 194 (319 SE2d 32) (1984). We granted certiorari to examine the Court of Appeals' interpretation of OCGA § 34-9-280.

OCGA § 34-9-280 (3) (F) lists five criteria which must be met before a disease which is incurred as a result of exposure to some harmful substance will be deemed an occupational disease.[1] OCGA § 34-9-281 (b) (3) provides that workers' compensation claims for occupational diseases must be brought within one year after "the last injurious exposure" to the substance.

1. Synalloy contends that workers' compensation is the exclusive remedy available to the employees. We agree.

It is axiomatic that the legislature intended that workers' compensation be the exclusive remedy of an employee who suffers an occupational disease, OCGA § 34-9-289, and the State Board of Workers' Compensation to be the sole tribunal hearing the claim, OCGA § 34-9-280 (3) (F). Although a claim comes within the coverage of the Act, it does not follow that it is always compensable. *Nowell v. Stone Mountain Scenic Railroad,* 150 Ga. App. 325 (257 SE2d 344) (1979). An injury stemming from an occupational disease (as defined by the Act) is within the coverage of the Act. It is not *compensable,* however, without a disability.

The claimants seize upon this very circumstance — that in no instance have all five of the statutory elements combined to create a compensable claim — to insist that they have a tort action under the provisions of OCGA § 34-9-289, providing in part as follows: "An employee who suffers disability or death from any occupational disease not listed in Code § 34-9-280 shall not be deprived of any common law rights under existing law." Because, they say, it cannot be established that they presently meet *all* the requirements of subparagraph (F), supra, they have, therefore, a common law right of action.

With this we disagree. First, the quoted language is held over,

---

[1] (F) Other occupational diseases, provided the employee or the employee's dependents first prove to the satisfaction of the State Board of Workers' Compensation (or the medical board, if the matter in controversy is referred to it under Code Section 34-9-311) all of the following:

(i) A direct causal connection between the conditions under which the work is performed and the disease;

(ii) That the disease followed as a natural incident of exposure by reason of the employment;

(iii) That the disease is not of a character to which the employee may have had substantial exposure outside of the employment;

(iv) That the disease is not an ordinary disease of life to which the general public is exposed;

(v) That the disease must appear to have had its origin in a risk connected with the employment and to have flowed from that source as a natural consequence.

For the purposes of this subparagraph, partial loss of hearing due to noise shall not be considered an occupational disease.

unchanged from the time when all of the occupational diseases then recognized were identified by name, i.e., "listed." The 1971 amendment added another category, generically defined, (without limiting such expanded coverage by undertaking to "list" each disease thereby included). See Ga. L. 1946, p. 103, which is the genesis of the quoted portion of OCGA § 34-9-289.

Second, subsection (F) is not merely a checklist of circumstances against which each potential claimant must compare his medical history, symptoms, and work experience. To the contrary, subsection (F) is in large part a description of the term "occupational disease." Thus, when subsection (F) (iii) provides "That the disease is not of a character to which the employee may have had substantial exposure outside the employment," it cannot be held to refer to the particular ailment of a named employee, and of the possible exposure of that employee to a given disease in circumstances not related to his specific employment. To the contrary, it is the "character" of the disease which is controlling.

This very case provides an excellent example, inasmuch as any disability flowing from exposure to beta-napthylamine (BNA) would be a disease "not of a character to which the employee may have had substantial exposure outside the employment." Further, under the provisions of subsection (F) (iv) it is assuredly the case that a disease stemming from exposure to BNA is "not an ordinary disease of life to which the general public is exposed." Similar analyses might be drawn from the other constituent elements of subparagraph (F).

Hence, it is seen that as to occupational diseases the General Assembly has not converted the Workers' Compensation Act into a complex of jury issues wherein every worker pursuing a tort action — and every employer resisting a workers' compensation claim — might dispute any portion of any of the five elements of the statutory description. To so interpret it would nullify the statute and its goal of producing stated benefits for job-related disability, independent of fault.

2. As for pre-1971 employees, the Court of Appeals held that their claims had accrued at the termination of employment, and that they were entitled to seek tort relief, as the 1971 amendment had not been passed at that time.

With this conclusion we respectfully disagree. At such time as there shall co-exist all of the elements which, at law, combine to create a cause of action, that cause of action is deemed to be vested, and thereafter cannot be diminished by legislative act. Before that time, however, when the elements which ultimately might combine to create the cause of action are as yet inchoate, a new statute may delineate any cause of action which shall mature after its effective date. *Hart v. Owens-Illinois Corp.*, 250 Ga. 397 (297 SE2d 462) (1982). Hence, the question becomes — when did the claims of pre-1971 em-

ployees vest?

In Georgia, a cause of action in tort does not vest until three elements exist: (1) the person is injured; and (2) learns or reasonably should have learned of the injury; and (3) learns or reasonably should have learned of the cause of the injury. *King v. Seitzinger's, Inc.*, 160 Ga. App. 318 (287 SE2d 252) (1981). Because the 1971 amendment was enacted before the occurrence of any compensable injury, the statute as amended must be the exclusive remedy for the pre-1971 employees. Thus, *no* plaintiff has a common law action in tort.

3. While workers' compensation is the exclusive remedy of Synalloy's employees, there can be no claim without disability. As no plaintiff yet has become disabled, as required by OCGA § 34-9-281 (b) (1), none has at this time a workers' compensation claim.

We note that in occupational disease cases the legislature has allowed for only a one-year period of limitations between exposure and disability, which is likely too restrictive, for in many cases a cause of action will be barred before it arises. That presents substantial constitutional questions. See *Clark v. Singer*, 250 Ga. 470 (298 SE2d 484) (1983). But here is not the place for such an excursus.

*Judgment reversed. All the Justices concur, except Clarke, Smith, and Gregory, JJ., who dissent.*

GREGORY, Justice, dissenting.

I disagree with the analysis and the judgment of the majority opinion and respectfully dissent.

Appellees are former employees of Synalloy Corporation who sued in tort seeking damages for alleged injuries suffered when exposed to the carcinogen, beta-napthylamine (BNA). Synalloy defended in part on a contention suit was barred because workers' compensation laws provided the exclusive remedy. Summary judgment was sought on this ground but was denied by the trial court. The Court of Appeals affirmed. *Synalloy Corp. v. Newton*, 171 Ga. App. 194 (319 SE2d 32) (1984). Certiorari was granted because of our concern with the interpretation of the occupational disease provisions of the Workers' Compensation Act. OCGA §§ 34-9-280 thru 292.

In the complaint filed August 26, 1983 in Richmond Superior Court, the three plaintiffs alleged they were employees of Synalloy or its predecessor during the years 1949 through 1972. During that time, they alleged, Synalloy manufactured and used the chemical BNA which Synalloy knew or should have known was a cancer causing agent affecting the bladder and urinary system. They also alleged that plaintiffs did not know or appreciate the dangers of BNA until on or about November 30, 1981. Several allegations of negligence of Synalloy were specified and claimed to be the proximate cause of injuries and damages suffered. Synalloy filed a motion for summary judgment

contending the claims of the plaintiffs were covered under OCGA § 34-9-280 (3) (F) and therefore could not be brought as tort actions since workers' compensation provided the exclusive remedy. In connection with the motion, and any appeal which might follow, counsel, in a very helpful undertaking, conferred and were able to produce a statement of undisputed facts. There it is disclosed that plaintiff, David Samuels, began his employment in 1972. Roger James Newton was employed for 20 days in 1970 and Jesse C. Williams, Jr. was employed for a period of time prior to 1971. Synalloy and its predecessor sometimes manufactured BNA from 1949 to 1972. In 1968 the Georgia Public Health Department determined that the necessary precautions were being taken in production of BNA, but in 1972 the National Institute of Occupational Safety and Health notified Synalloy that the method of manufacture of BNA was not as safe as it would recommend. Within a week Synalloy ceased manufacturing BNA. In 1977 the National Institute of Occupational Safety and Health began a program of notifying former employees of Synalloy of the danger of BNA. Thereafter this suit was filed.

1. I first turn to the issue regarding the exclusiveness of workers' compensation as a remedy for these plaintiffs.

Synalloy points out that there are occasions when a claim is *covered* by workers' compensation but it is a claim without *compensability*. *Blue Bell Globe Manufacturing Co. v. Baird*, 64 Ga. App. 347 (13 SE2d 105) (1941); *Nowell v. Stone Mountain Scenic Railroad*, 150 Ga. App. 325 (257 SE2d 344) (1979). Synalloy particularly points to the much publicized opinion in *Silkwood v. Kerr-McGee Corp.*, 667 F2d 908 (10th Cir. 1982), reversed in part, 104 SC 615 (1984). The point was vividly made there by the hypothetical case of a worker who hit his thumb with a hammer causing pain and suffering but no loss of time. The accident would be covered by workers' compensation and a common law tort suit would be barred. There would be no award in a workers' compensation claim because such an injury would not be compensable. As hard as that result may seem to some, it is probably the rule everywhere. However, even though applied by the majority, I would hold it is not the principle which governs this case. We have before us a peculiar matter of statutory construction in the limited field of occupational diseases. The provision governing the exclusiveness of remedy in occupational disease cases in Georgia is OCGA § 34-9-289:

"Whenever an employer and employee are subject to this chapter, the liability of the employer under this article for the disability or death of the employee from an occupational disease in any way incurred by such employee in the course of or because of his employment shall be exclusive and in place of any and all other civil liability whatsoever at common law or otherwise to such employee or to his

personal representative, next of kin, spouse, parents, guardian, or any others. *An employee who suffers disability or death from any occupational disease not listed in Code § 34-9-280 shall not be deprived of any common law rights under existing law.*" (Emphasis supplied.)

To understand this provision one must briefly consider the legislative history. The Code of 1933 excluded from workers' compensation coverage all diseases except those resulting from an accident. Ga. Code 1933, § 114-102. Accidents were covered, but diseases were not. The Code made no distinction between ordinary diseases and occupational diseases. All were excluded. There was a provision limiting an employee suffering from an "accident" to the rights afforded under workers' compensation law. Ga. Code 1933, § 114-103. Those affected by diseases were left to whatever remedies might be available elsewhere.

The rapid industrial growth of World War II focused attention on harmful effects employees endured from use of "elements, metals, and chemical by-products" in the manufacturing process. Morgan, L., "Occupational Diseases Under the Georgia Workmen's Compensation Act," 8 Mercer Law Review 333 (1957). The legislature added a new chapter to the existing workers' compensation code in 1946. It brought under the workers' compensation umbrella certain enumerated occupational diseases. They were limited to four: (1) poisoning (by certain agents); (2) diseased condition caused by exposure to x-rays or radioactive substance; (3) asbestosis; and (4) silicosis. The remedy given for the four occupational diseases was made the exclusive remedy. All common law rights under existing laws were reserved for diseases not listed. Ga. L. 1946, p. 109.

In 1971 the Code was amended to add another category of occupational diseases, beyond the original four. It was a broad provision which included those occupational diseases where the employee could prove all of the following elements: (It is now OCGA § 34-9-280 (3) (F) (i thru ii).)

"(a) A direct causal connection between the conditions under which the work is performed and the disease; (b) that the disease followed as a natural incident of exposure by reason of the employment; (c) that the disease is not of a character to which the employee may have had substantial exposure outside of the employment; (d) that the disease is not an ordinary disease of life to which the general public is exposed; (e) that the disease must appear to have had its origin in a risk connected with the employment and to have flowed from that source as a natural consequence." Ga. L. 1971, pp. 895, 900.

The provision governing exclusiveness was not changed in the 1971 Act. Common law remedies were still available for occupational diseases not listed. It is obvious the 1971 amendment to the four specific occupational diseases of the prior Act did not undertake to in-

clude all remaining occupational diseases, but only those meeting the five criteria. Particularly illuminating is criteria (c) above. One can well imagine a disease where exposure to the harmful element occurred in part on the job and in part elsewhere. The combination of the two exposures may bring about the harm, yet this would fail to qualify as an occupational disease if "substantial exposure occurred outside the employment." Common law remedies have not been replaced by workers' compensation remedies for such a disease. It is "not listed." OCGA § 34-9-289.

Thus, as I see it, the intention of the legislature was to bring certain, but not all, occupational diseases under the workers' compensation umbrella. Unless the occupational disease is one specifically named, it only comes under the workers' compensation laws if it meets the five criteria of OCGA § 34-9-280 (3) (F). As I read the record, there are disputed issues of fact about this. If the fact finder determines the criteria have been met, the case is a workers' compensation case and must proceed in that forum. If not, the case may proceed as a common law tort action. I would hold it was not error for the trial court to deny summary judgment to Synalloy and that the Court of Appeals correctly affirmed that part of the trial court's order.

The majority hold that subsection (F) does not refer to the particular ailment of a named employee. Instead, the opinion interprets the subsection to identify characteristics which a disease must possess. I do not read it that way.

The statute first states that "occupational disease" means those diseases listed. OCGA § 34-9-280 (3). Reading on, one finds five diseases listed by name, (A) poisoning, (B) disease caused by exposure to X-rays or radioactive substances, (C) asbestosis, (D) silicosis, and (E) byssinosis. (Added by Ga. L. 1982, p. 2485 at 2489.) Then the sixth item on the list is "(F) other occupational diseases. . ." provided an employee can prove the existence of five criteria. Among the things which an employee must show is "[a] direct causal connection between the conditions under which the work is performed and the disease. . . ." That means this employee must show that connection in his particular case. He must show, "[t]hat the disease followed as a natural incident of the exposure by reason of the employment. . . ." This is directed to the particular ailment of this employee and not to general characteristics of a disease.

If (F) is construed to provide characteristics which a disease must possess in order to be an occupational disease, it is interesting to consider whether the diseases specifically listed as occupational diseases could qualify under (F) if they had not been specifically listed. I suggest asbestosis is a disease of a character to which an employee may have substantial exposure outside employment. If so, asbestosis would

not have the necessary characteristics to qualify as an occupational disease under (F). But I believe the proper inquiry is whether or not a given employee has been exposed to asbestosis outside his employment. Consider poisoning by arsenic. An employee "may have had substantial exposure outside" his employment to arsenic in a general sense. If so, if poisoning had not already been listed as an occupational disease it would not qualify under (F). The point is, the proper inquiry should be whether or not this particular employee had substantial exposure outside his employment in this case.

I am led to this conclusion for the additional reason that the statute provides elsewhere for general characteristics which must attach in order to render an employer liable for compensation. An occupational disease not only must be "listed," it is an "occupational disease" only if it is ". . . due to causes and conditions which are characteristic of and peculiar to the particular trade, occupation, process, or employment in which the employee is exposed to such disease (excluding all ordinary diseases of life to which the general public is exposed). . . ." OCGA § 34-9-280 (3). Furthermore, there is liability only if, "[s]uch disease arose out of and in the course of the employment in which the employee was engaged under such employer, was contracted while the employee was so engaged, and has resulted from a hazard characteristic of the employment in excess of the hazards of such disease attending employment in general. . . ." OCGA § 34-9-281 (b). These limitations apply to all listed diseases including subsection (F).

2. In reaching the conclusion that the Workers' Compensation Act is not a bar to the tort actions the trial court and Court of Appeals dealt separately with the claim of Newton and Williams, both of whom terminated their employment with Synalloy prior to 1971, the year of the amendment to the occupational disease statute. OCGA § 34-9-280 (3) (F). Samuels was employed after the effective date of the amendment. The courts below held that the amendment did not apply to the pre-1971 employees. The rationale used was that so clearly set forth in *Hall v. Synalloy Corp.*, 540 FSupp. 263 (1982). That is, the relationship between employees and employers is one of contract. Under this view, the workers' compensation laws are grafted onto the contract. Whether there is workers' compensation coverage is determined by the law in effect during the term of the contract of employment. Laws enacted after the termination of the contract are not a part of the contract. The result of this approach is that the pre-1971 employees are governed by the workers' compensation law as it existed prior to the 1971 amendment. There was no provision at that time such as that which is now found in OCGA § 34-9-280 (3) (F), and therefore no bar to a common law action. I would not follow this view. To do so would render the legislature helpless to provide a remedy in

workers' compensation for those who suffer exposure to harmful substances during employment with delayed disability until after termination of employment. Unless the remedy was provided before termination of employment none could be afforded afterward.

I view the relationship of employees and employers, as that relationship is affected by workers' compensation laws, as one of status rather than contract.

"The courts have used the term 'contract' in workmen's compensation cases much as they have used that term when speaking of marriage 'contracts.' In employment, like in marriage, the parties must agree to enter the relationship, but once they do the law dictates to them their rights and liabilities. And, as in marriage — within legal limitations having nothing to do with the impairment of contract, the law may change those rights and liabilities, not only at any time during the relationship but sometimes even after it has been terminated, as, for example, after the employee has stopped working for the employer because of an injury. [Cits.]" *McAllister v. Bd. of Education, Town of Kearny*, 79 N.J. Super. 249, (191 A2d 212, 217, 218) (1963).

In rejecting the contract approach the North Carolina Supreme Court observed in *Wood v. J. P. Stevens & Co.*, 297 N.C. 636 (256 SE2d 692, 700) (1979):

"Under traditional contract law the rights of the parties are fixed at the time the contract is entered. One would therefore expect a court following this theory to apply the law in effect at the time the employment contract begins. In cases of accidental injury, however, the well-established rule in this and other jurisdictions is that the claim is governed by the law in effect at the time of injury, despite the fact that the law may have changed radically between the formation of the contract and the date of injury."

I recognize the difficulty encountered in occupational disease cases in fixing a date certain when the injury occurred. Many occupational diseases are caused by exposure to a deleterious substance over a long period of time, often many years. At first there is no apparent harm, but gradually, over time, the damage accumulates. Often symptoms gradually appear and finally disability sets in. When was the injury done? When did the accident happen? The resolution of this dilemma is by statute. "Where the employer and employee are subject to this chapter, the disablement or death of an employee resulting from an occupational disease shall be treated as the occurrence of an injury by accident; and the employee or, in the case of his death, his dependents shall be entitled to compensation as provided by this chapter." OCGA § 34-9-281 (a).

I would hold the pre-1971 employees are bound by the 1971 amendment as is the post-1971 employee. The same rights and remedies are afforded all. They may proceed in tort unless the criteria of

OCGA § 39-9-280 (3) (F) are met, in which event the remedy lies in workers' compensation.

I am authorized to state that Justice Clarke and Justice Smith join in this dissent.

DECIDED FEBRUARY 27, 1985 —
REHEARING DENIED MARCH 28, 1985.

*Fulcher, Hagler, Reed, Obenshain, Hanks & Harper, Duncan D. Wheale, William C. Reed,* for appellant.
*Daniel J. Craig,* for appellees.