CONTINENTAL CASUALTY
COMPANY, Plaintiff,

v.

SYNALLOY CORPORATION, General Accident Fire and Life Assurance Corporation, Ltd., Midland Insurance Company, Stonewall Insurance Company, Certain Underwriters at Lloyd's and All Other Underwriters Subscribing to a Policy of Insurance No. LOM 9081, Certain Underwriters at Lloyd's and All Other Underwriters Subscribing to a Policy of Insurance No. LOM 9080, Certain Underwriters at Lloyd's and All Other Underwriters Subscribing to a Policy of Insurance No. LOM 9520, First State Insurance Company, Lexington Insurance Company, American Mutual Liability Insurance Company, Affiliated F.M. Insurance Company, Defendants.

and

SYNALLOY CORPORATION,
Third-Party Plaintiff,

v.

COLUMBIA CASUALTY COMPANY
and Fidelity & Casualty Company
of New York, Third-Party Defendants.

CV182–158.

United States District Court,
S.D. Georgia,
Augusta Division.

June 26, 1985.

Blake & Thompson, Joseph J. Blake, Jr., Haynsworth, Marion, McKay & Guerard, Thomas H. Coker, Jr., Greenville, S.C., James M. Thompson, Lee & Clark, P.C., Savannah, Ga., for Synalloy Corp.

Laronce Beard, Augusta, Ga., for Joe Roberts.

Daniel S. Reinhardt, John P. Dalton, Atlanta, Ga., for defendants Charles Allen Skey, Rep Underwriter at Lloyd's, Walbrook Ins. Co., Ltd., St. Katherine Ins. Co., Ltd (XA/C), St. Katherine Ins. Co., Ltd., Turegum Ins. Co., Bellefonte Ins. Co., English & American Ins. Co., Dominion Ins. Co., Ltd., & Lexington Ins. Co.

David B. Higdon, Joseph H. Davis, Macon, Ga., for Fidelity & Cas. Ins. of New York.

Taylor Putney, Jr., John D. Jones, Atlanta, Ga., for American Mut. Liability Ins. Co.

Luhr G.C. Beckmann, Jr., Andrew J. Hill, III, Beckmann & Pinson, P.C., Savannah, Ga., for Gen. Acc. Ins. Co.

R. Coleman Miller, James B. Hiers, Jr., Atlanta, Ga., for defendant Gen. Acc. Fire and Life Assur. Corp. Ltd.

Ronald D. Reemsnyder, Atlanta, Ga., for First State Ins.

James McGuire, Mendes & Mount, New York City, Wm. Byrd Warlick, Augusta, Ga., for third-party defendant Columbia Cas. Co.

Percy J. Blount, Burnside & Wall, Augusta, Ga., for Brown, Hall, Oliphant, Powell, Sturgis, Utley and White.

J. Robert Persons, Lord, Bissell & Brook, Atlanta, Ga., for Appalachian Ins. Co., and Affiliated FM Ins. Co.

John W. Winborne, III, Atlanta, Ga., for Midland Ins. Co. and First State Ins. Co.

Richard R. Mehrhof, Jr., Augusta, Ga., for Stonewall Ins. Co.

## ORDER

EDENFIELD, District Judge.

### I. *Introduction*

Continental Casualty Company ("Continental") maintains this declaratory judg-

David A. Handley, Thomas E. McCarter, Michael W. Higgins, Atlanta, Ga., for plaintiff.

ment action in diversity against its insured, Synalloy Corporation ("Synalloy"), and Synalloy's various primary and excess insurers, for the purpose of having this Court decide which, if any, of these insurers, including Continental, are obligated under the terms, conditions, exclusions, and limitations of their individual policies with Synalloy, to defend Synalloy against certain tort claims asserted by its employees, and to indemnify Synalloy in the event that a judgment is rendered against it on any of these underlying claims. Synalloy in response has asserted a counterclaim against Continental for damages allegedly arising out of Continental's refusal to respond to its demands for coverage on these claims, and Synalloy likewise seeks by way of cross-claim against the defendant insurers a declaratory judgment as to its rights and their obligations under their respective insurance contracts. Synalloy also impleaded Columbia Casualty Company and Continental Insurance Company (later substituted as Fidelity & Casualty Insurance Company of New York), as two additional carriers who had issued policies of insurance to Synalloy.

## II. Background

This action was filed on July 23, 1982, and during the last three years, the Court has issued several orders on the basis of facts found on the record and determined as pertinent to the particular issues decided. The Court follows that procedure in this opinion, expressing as its findings only those facts that furnish the background necessary to decide the issues discussed. In that connection, the parties should be aware that any facts found in this ruling are within its background and discussion.

Synalloy is a South Carolina corporation which purchased the assets of Augusta Chemical Company in 1967. During the period between 1949 and 1972, Augusta

Chemical Company and then Synalloy used in its manufacturing process the chemical betanapthalamine ("BNA") which was publicized starting in 1981 as having carcinogenic properties. Following this publicity, a number of lawsuits were filed by current and former employees of Synalloy and Augusta Chemical Company, contending that their employer had been negligent in its use of BNA, that it had fraudulently concealed its knowledge that BNA could cause cancer, and that these employees were entitled to damages for personal injury and mental suffering as a result of their exposure to BNA and their discovery of the effects of exposure to BNA.

These lawsuits filed by employees naturally raised the question of insurance coverage. Numerous carriers have provided various kinds and amounts of insurance coverage for Augusta Chemical Company and Synalloy during the years from 1949 to the present. Briefly, primary coverage apparently was afforded by American Mutual Liability Insurance Company ("American Mutual") to Augusta Chemical Company up to and including 1967, at which time Synalloy purchased primary coverage from General Accident Fire and Life Assurance Corporation, Ltd. ("General Accident"), which insurer has continued its coverage to date. In addition to primary insurance coverage, Synalloy purchased excess coverage during the following years from the following companies:

| | |
|---|---|
| Continental Casualty Company | 1969–1975 |
| Affiliated FM Insurance Company | 1975–1976 |
| Columbia Casualty Company | 1975–1976 |
| Midland Insurance Company | 1975–1977 |
| Stonewall Insurance Company | 1975–1977 |
| Lloyd's | 1977–1980 |
| First State Insurance Company | 1980–1982 |
| Fidelity & Casualty Company of New York | 1982 |

When Synalloy began receiving the BNA lawsuits from its employees[1] in 1981, it notified its primary insurance carrier, Gen-

---

1. By Order dated February 19, 1985, the Court concluded that for purposes of this declaratory judgment action, persons employed by Augusta Chemical Company prior to the 1967 transaction between that corporate entity and Synalloy are necessarily deemed to be employees of Synalloy, and therefore are to be accorded the same

rights of action and subject to the same limitations of remedy as are those persons employed by the corporate successor, Synalloy, after 1967. On that basis, the Court will refer to all employees herein as employees of Synalloy, or employees of the "insured," being Augusta Chemical Company and Synalloy.

eral Accident. By letter dated July 30, 1981, General Accident informed Synalloy that it would undertake defense of these claims under a reservation of rights, based on its position that a question of coverage existed. Specifically, General Accident knew that Synalloy had discontinued use of BNA in 1972, and Insurance Agreement IV [2] and Exclusion (e) [3] of its workers' compensation and employer's liability policy in effect from January 1, 1972 to January 1, 1973 precluded coverage of the claims raised in the lawsuits, according to General Accident. Indeed, this insurer informed Synalloy that it intended to seek declaratory relief on this question of coverage. General Accident further denied any obligation to defend or indemnify any claims for injury or death of Augusta Chemical Company employees, whose exposure to BNA had occurred prior to September 29, 1967, and also denied any coverage at all under the comprehensive general liability policies. General Accident noted in addition that the limit of its coverage was $100,000 per year under its 1972–73 policy, in the event coverage was available.

Rather than wait for General Accident's next move, Synalloy in 1981 brought a declaratory judgment action on these issues in the United States District Court for the District of South Carolina. While that action was pending, General Accident and Synalloy negotiated an agreement whereby General Accident agreed to provide coverage for the BNA claims under Coverage B of its workers' compensation and employer's liability policies in effect from January 1, 1967 to January 1, 1973, waiving Exclusion (e) as contained these policies. No other terms, conditions, exclusions, or limitations included in these policies were amended. As consideration, Synalloy agreed to place its worker's compensation,

general liability, and auto liability coverage with General Accident under a three-year retrospective plan for the period January 1, 1982 to January 1, 1985. Coverage for losses and legal expenses paid in connection with the BNA claims were included in this retrospective plan.

After entering into this "1982 Letter Agreement," as it has been termed in the instant action, Synalloy dismissed, without prejudice, the South Carolina declaratory judgment action. General Accident undertook to defend those BNA claims which it deemed as possibly existing within its policy limits, which did not include all the claims asserted against Synalloy. Accordingly, Synalloy turned to its excess carriers for additional defense and indemnity. These excess insurers uniformly denied coverage on the BNA claims, and on July 23, 1981, Continental, as one of these excess insurance carriers, filed the complaint commencing this declaratory judgment action, as amended on October 18, 1984.

Meanwhile, the tort claims instituted by employees exposed to BNA were proceeding through litigation in other forums. The winning contention of Synalloy in those suits was that workers' compensation was the exclusive source of relief available to the BNA claimants, and this defense received published attention in decisions issued by both a federal district court and the Georgia appellate court.[4] As to the instant action, this Court ruled by an order dated February 19, 1985 that the employees of Augusta Chemical Company are employees of Synalloy for purposes of determining insurance coverage on the BNA claims. Then in *Synalloy Corp. v. Newton*, 254 Ga. 174, 326 S.E.2d 470 (1985), *reversing* 171 Ga.App. 194, 319 S.E.2d 32 (1984), *reh'g denied*, No. 41336 (March 28, 1985), the Supreme Court of Georgia held

---

2. IV. *Application of Policy.* This policy applies only to injury (1) by accident occurring during the policy period, or (2) by disease caused or aggravated by exposure of which the last day of the last exposure, in the employment of the insured, to conditions causing the disease occurs during the policy period.

3. *This policy does not apply:* (e) under coverage B, to bodily injury by disease unless prior to

thirty-six months after the end of the policy period written claim is made or suit is brought against the insured for damages because of such injury or death resulting therefrom.

4. *See Hall v. Synalloy Corp.,* 540 F.Supp. 263 (S.D.Ga.1982); *Synalloy Corp. v. Newton,* 171 Ga.App. 194, 319 S.E.2d 32 (1984).

that workers' compensation is the exclusive remedy of Synalloy's employees asserting claims for injuries resulting from BNA exposure.

During the pendency of this litigation in all forums, settlements with the BNA claimants have totalled the approximate sum of $287,534.00, with defense of those suits costing approximately $679,000.00.

### III. *Discussion*

The purpose of this ruling is to determine the effect of the Georgia Supreme Court's declaration in *Newton* on the outstanding issues posed by this litigation, peel away as many issues as can be decided at this time, and move this litigation into a framework for final disposition, following a non-jury trial convening on July 1, 1985.

The Court begins this task by reminding the parties that a declaratory judgment may be issued only in the case of "an actual controversy," as that term is defined under Article III of the Constitution. "That is, under the facts alleged, there must be a substantial continuing controversy between parties having adverse legal interests." *Emory v. Peeler,* 756 F.2d 1547, 1552 (11th Cir.1985) (citations omitted). "[T]he continuing controversy may not be conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury." *Id.* (citations omitted). "The remote possibility that a future injury may happen is not sufficient to satisfy the 'actual controversy' requirement for declaratory judgments." *Id.*

In that connection, the Court finds that *Newton* has substantial bearing on what the Court may decide in this case. First, the underlying tort cases on which this dispute turns were filed by persons alleging personal and mental injury as a result of their employment at Synalloy, their consequent exposure to BNA, and their dis-

covery of its potentially hazardous effects. *Newton* held that these plaintiffs have no common law right of action in tort; rather, workers' compensation is their exclusive remedy. *Synalloy Corp. v. Newton,* 254 Ga. at 177, 326 S.E.2d 470 (1985). Accordingly, those tort actions not already settled must be dismissed, since *Newton* undoubtedly will be given retroactive effect. *See E.E.O.C. v. Atlantic Gas Light Co.,* 751 F.2d 1188, 1189–91 (11th Cir.1985) (general rule at common law is to give judicial decisions retroactive effect, with the exception of a narrow range of cases meeting the test outlined in *Chevron Oil Co. v. Huson,* 404 U.S. 97, 106–07, 92 S.Ct. 349, 355, 30 L.Ed.2d 296 (1971)). Moreover, because *Newton* determined that the disability resulting from exposure to BNA would be a disease "not of a character to which the employee may have had substantial exposure outside the employment," 254 Ga. at 176, 326 S.E.2d 470, but is an occupational disease, a filing at this time under the Georgia Workers' Compensation Act probably would be time barred by the one-year period of limitation between exposure and disability. *Id.* at 177, 326 S.E.2d 470. Thus, this Court concludes that the only actual controversy subject to declaratory relief in the instant action[5] is who shall pay the costs already incurred as a result of the defense and settlement of the underlying tort cases.[6]

Considering the number of parties to this litigation, it is as a practical matter more efficient to determine first who is *not* responsible for such insurance coverage. Therefore, the Court will proceed in its task from such a perspective, albeit negative to some, but positive to others.

### A. The Primary Insurers: General Accident and American Mutual

#### (1) Duty to Defend

In an order dated September 28, 1983 at 24, this Court determined that the common

---

**5.** While the *Newton* court suggested that the one-year period of limitation between exposure and disability may be unconstitutional, resolution of that question was not before that court and is not before this Court, nor may this Court now speculate as to whether future workers' compensation claims for disability resulting

from BNA disease will be permitted under a revised statute of limitation.

**6.** For the moment, the Court places Synalloy's counterclaim against Continental for bad faith damages to the side of this ruling effecting declaratory relief.

law as it exists in Georgia would govern the construction of the insurance contracts at issue in this action. Under Georgia law, an insurer's duty to defend is contractually based. *Liberty Mutual Insurance Co. v. Mead Corp.*, 219 Ga. 6, 8 (1963). The parties have stipulated to the terms, conditions, and exclusions contained in all the insurance policies at issue,[7] including those allegedly provided Augusta Chemical Company by American Mutual and Synalloy by General Accident. These policies all include essentially the same, standard provision, which obligates the insurer to defend any suit against the insured for an injury covered by the policy, even if the suit is "groundless, false or fraudulent." Accordingly, as the duty to defend is determined by the insurance contract, "and since the contract obligates the insurer to defend claims asserting liability under the policy, even if groundless, the allegations of the complaint are looked to to determine whether a liability covered by the policy is asserted." *Loftin v. U.S. Fire Ins. Co.*, 106 Ga.App. 287, 294, 127 S.E.2d 53 (1962). *See also, Great American Ins. Co. v. McKemie*, 244 Ga. 84, 85, 259 S.E.2d 39 (1979); *State Farm Mut. Auto Ins. Co. v. Keene*, 111 Ga.App. 480, 142 S.E.2d 90 (1965). "[I]f the complaint alleges facts, even though groundless, false, or fraudulent, bringing the litigation within the coverage provisions of the policy, a defense must be provided; but if the coverage elements do not appear from the complaint, and if the investigation into the 'true facts' reveals that a suit alleging the necessary coverage elements would be groundless, false, or fraudulent, no defense is required because the duty of defense is only with respect to 'such insurance afforded by the policy.'" *Tennessee Corp. v. Hartford Accident and Indemnity Co.*, 463 F.2d 548, 551 (5th Cir.1972) (applying Georgia law).

■ Thus, in deciding whether there was ever a duty to defend the underlying tort claims, the Court need determine only whether the allegations made in the complaints were covered by the insurance policies at issue, and if so, whether such alle-

gations otherwise were excluded from coverage. In that connection, the Court notes that while a party claiming coverage under an insurance policy has the burden of proving that the claim is covered by the policy, *see Shivers Chix v. Georgia Farm Bureau Insurance Co.*, 150 Ga.App. 453, 454, 258 S.E.2d 208 (1979), the burden is on the insurer to show that such claim is precluded by a contract exclusion. *State Mutual Life Assurance Co. of Worcester, Mass. v. Dorsey*, 357 F.2d 600, 602 (5th Cir.1966) (applying Georgia law).

As the Court observed previously, the complaints underlying this declaratory judgment action state in pertinent part that employees of the insured suffered physical injuries as a result of continual exposure to BNA over a period of time on the insured's premises, and mental injury as a result of learning in 1981 that they were subject to an increased risk of cancer. BNA was not used by the insured after 1972, and the parties have stipulated that the effort to clean the chemical out of the insured's premises was completed in January, 1973. No claimant alleges that injury resulting from exposure to BNA occurred outside of the course of their employment, at home, or otherwise away from work through contact with the chemical in the ambient atmosphere.

Finally, the Court accepts as an intellectually honest finding by the courts in *Hall v. Synalloy*, 540 F.Supp. 263, 266 (S.D.Ga. 1982) and *Synalloy Corp. v. Newton*, 171 Ga.App. 194, 319 S.E.2d 32 (1984) (reversed by *Synalloy Corp. v. Newton*, 254 Ga. 174, 326 S.E.2d 470 (1985) on the ground that the disease alleged to have injured *all* BNA claimants employed by the insured is an "occupational disease" under O.C.G.A. § 34–9–280(3)(F)), that the physical injury allegedly resulting from continuous exposure to BNA is to be qualified as a "disease." That finding is amply supported by the evidence on record in this case, as adduced at hearings held before the Court on December 3 and 4, 1984, showing that the injurious response to BNA exposure is the "setting in motion of a process that will

7. *See generally* Schedule of Insurance Policies.

eventually result in the clinical manifestation of a cancer in the urinary tract, specifically the renal pelvis, the ureter, or the bladder." (T. at 264; *see generally* 118, 132, and 171–73). On the other hand, the claims of mental injury alleged by these same employees are based on their discovery in 1981 of the potentially hazardous effects of BNA exposure.

The policies admitted into evidence for purposes of this action, as representative of those issued by American Mutual and General Accident as primary insurers, provide two categories of insurance to the insured. The Court must determine which, if any, possibly covered these claims for personal and mental injury.

### (a) *American Mutual*

American Mutual provided general liability insurance and workmen's compensation and employer's liability insurance to the insured from the period June, 1939 to October, 1967. Reviewing first the general liability policies,[8] the Court finds expediently that even if coverage were afforded by the terms of these contracts, the following exclusions apply to determine the insurer's ultimate duty:

Exhibit A (policy in effect until 1954)

THIS POLICY DOES NOT APPLY:

1. to bodily injury to, or sickness, disease or death of any employee of the insured while engaged in the employment of the insured, or any obligation for which the insured or the insurer of the insured may be held liable under any Workmen's Compensation Law[.]

Exhibit B (policy in effect sometime after 1948 but in all events by June 1955 to 1967)

This policy does not apply:

(j) under coverage A [BODILY INJURY LIABILITY], to bodily injury to or sickness, disease, or death of any employee of the insured arising out of and in the course of his employment by the insured[.]

■ Conclusively, these general liability policies issued by American Mutual to the

insured during the period 1949 to 1967 excluded coverage for bodily injury[9] to and disease of employees which occurred in the course of their employment. Such a coverage exclusion is valid and enforceable under Georgia law to bar actions against liability policies for bodily injuries to employees arising out of and in the course of their employment. *Williams v. Lumbermans Mut. Ins. Co.*, 164 Ga.App. 435, 437, 297 S.E.2d 345 (1982). The Court has found that the allegations made in the complaints underlying this declaratory judgment action state claims for bodily injury by disease, arising in the course of the claimants' employment with the insured; accordingly, exclusions such as those contained in American Mutual's general liability policies effectively deny coverage on the BNA claims, as they pertain to bodily injury.

■ As to the claims for mental injury allegedly suffered by the BNA claimants, the Court observes that such injury, if any, resulted only after these claimants learned in 1981 of the potentially hazardous effects of BNA exposure. Such injury in 1981 is not covered by insurance contracts issued for policy periods preceding 1968. *See* discussion in Court's Order dated September 28, 1983 at 48–50.

Consequently, because an insurer is obligated to defend only those claims asserting liability under the policy, *Loftin*, 106 Ga. App. at 294, 127 S.E.2d 53, and American Mutual's general liability policies either did not cover the time of injury or otherwise excluded coverage of the claims as alleged, American Mutual did not owe a duty under these policies to defend its insured against the BNA claims.

■ The evidence shows that American Mutual also issued workmen's compensation and employers' liability insurance to the insured during the period from June, 1939 to October, 1967. With respect to the period of coverage between June, 1939 and October, 1954, the parties have stipulated

---

8. See Schedule of Insurance Policies Exhibits A and B.

9. Definition of this term is reserved for later discussion.

into evidence a standard endorsement [10] to a specimen workmen's compensation and employers' liability policy [11] which states in pertinent part as to employers' liability coverage, if any, that

10. The policy does not afford insurance under Paragraph One (b) with respect to the liability imposed upon this employer by law for damages on account of any disease caused or aggravated by periodic, frequent or continual exposure over a period of days, weeks, months or longer to conditions in the course of employment, or any occupational disease.

As a matter of contract law, this exclusion from coverage is to be given its intended effect; it clearly and precisely excludes the claims for bodily injury asserted in the complaints underlying this action, as the alleged injury described is a disease caused by continual exposure of the insured's employees to BNA.

█ With respect to the period of coverage between 1955 and 1967, the parties have stipulated into evidence an updated workmen's compensation and employers' liability policy [12] providing that as to Coverage A—Workmen's Compensation, the law of the jurisdiction to which the insured is subjected will control the payment of compensation and all other benefits, while Coverage B—Employer's Liability, is subject to the exclusions listed on the face of the policy.

With reference to both this policy and its predecessor, the Court observes that no claim for workmen's compensation was asserted in the tort claims underlying this action. Thus, as to these policies, the Court will focus its attention exclusively on Coverage B—Employer's Liability, and the pertinent exclusions. In that connection, the updated American Mutual employer liability policy states that

This policy does not apply:

(e) under coverage B, to bodily injury by disease unless prior to thirty-six months after the end of the policy period written claim is made or suit is brought against

the insured for damages because of such injury or death resulting therefrom[.]

While not the absolute exclusion contained in the previous policy, the thirty-six month contractual limitation period for making a claim and filing suit remains as clear and precise as its predecessor, and has been determined valid and not against public policy in forums as far apart as Louisiana and New York. *See Zurich Insurance Co. v. Bouler*, 198 So.2d 129, 132 (La.App. 1st Cir.1967); *Johnson v. National Union Fire Insurance Co.*, 56 Misc.2d 983, 985, 289 N.Y.S.2d 852, 855 (1968), *aff'd*, 33 A.D.2d 924, 309 N.Y.S.2d 110 (1970). As discussed in *Scarborough v. Travelers Ins. Co.*, 718 F.2d 702 (5th Cir. 1983), an ordinary and intelligent business person entering into such a contract could only conclude, given the clear language used and the conspicuous placement of the exclusion, "that he had coverage for an employee's otherwise covered bodily disease if, but only if, a written claim or suit therefor was made or filed against him no longer than thirty-six months after the end of the policy period...." *Id.* at 708. "[A]ny other conclusion would have been unreasonable and contrary to the manifest intent of the parties." *Id.* at 709.

Although the Court is unable to find a Georgia case on point, Georgia law does hold generally that "[t]he contract limitation of time to bring an action against the insurer in an insurance policy is valid and binding," as a matter of agreement between the parties. *Commercial Union Insurance Co. v. F.R.P. Co.*, 172 Ga.App. 244, 245, 322 S.E.2d 915 (1984); *see Gravely v. Southern Trust Insurance Co.*, 151 Ga.App. 93, 94, 258 S.E.2d 753 (1979) (limitation period is a matter of definition under the insurance contract). The Court believes that under the circumstances in this case, where the contract was entered into by business persons experienced with insurance exclusions, and the exclusion at issue appears in standard print on the face of the policy, a Georgia court would find

---

10. See Schedule of Insurance Policies Exhibit H.

11. See Schedule of Insurance Policies Exhibit G.

12. See Schedule of Insurance Policies Exhibit F.

the period of limitation both valid and enforceable.

In that connection, applying the thirty-six month limitation period to the BNA claims asserted against the insured in 1981, the Court finds that such claims for injuries, qualified by the evidence as "disease," were not made within the limitation period to be applied in accordance with the terms of the last American Mutual policy allegedly issued for the 1967 policy period.

Similarly, as to the claims for mental injury allegedly suffered by the BNA claimants, the Court again observes that such injury, if any, resulted only after these claimants learned in 1981 of the potentially hazardous effects of BNA exposure. Such injury is not covered by contracts of insurance allegedly issued for policy periods preceding 1968. *See* discussion in Court's Order dated September 28, 1983 at 48–50.

Consequently, because a contract of insurance obligates the insurer to defend only those claims asserting liability under the policy, *Loftin,* 106 Ga.App. at 294, 127 S.E.2d 53, and American Mutual's workmen's compensation coverage was not invoked and coverage under its employer's liability is barred either by an absolute exclusion or by a contractual period of limitation, American Mutual did not owe a duty to defend its insured against the BNA claims asserted by the insured's employees.

In summary, the Court concludes that American Mutual has no duty to pay any share of the costs incurred in defending the tort claims underlying this action.

(b) *General Accident*

General Accident has provided primary insurance coverage to the insured since October, 1967 to the present. As to the BNA claims underlying this action, General Accident denied coverage in 1981 and continues to deny coverage under the policies represented by those stipulated into evidence.[13] An issue on which the Court reserves discussion at this time is what effect the 1982 Letter Agreement had on this insurer's duty to defend under these policies.

Primary coverage afforded by General Accident to the insured was provided under the terms, conditions, exclusions, and limitations contained in its successive general liability policies and its worker's compensation and employers' liability policies. With respect to its general liability coverage, General Accident maintains as common knowledge that general liability policies exclude injuries to employees; however, the Court will not take notice of this statement as fact. Rather, the Court will continue its task of comparing the allegations made in the underlying complaints to the coverage elements of the policies at issue to determine whether General Accident had a duty to defend, notwithstanding the terms of the 1982 Letter Agreement.

The General Accident general liability policy in evidence[14] essentially provides coverage for bodily injury (Coverage A) and property damage (Coverage B) caused by an occurrence. Carrying forward those findings necessarily made in reference to American Mutual's policies, the Court finds that the bodily injury suffered by the underlying tort claimants is qualified by the evidence in this case as a disease caused by continual exposure to BNA during the course of the claimants' employment with the insured. Whether the mental injury also alleged by the BNA claimants is included within the definition of bodily injury is an issue reserved for later discussion.

As stated in the definition section of the policy, the term "bodily injury" means "bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom[.]" Thus, it would appear that the policy affords coverage for the bodily injury at issue, being a "disease."

The section of the policy stating exclusions, however, shows in pertinent part that

---

13. See Schedule of Insurance Policies Exhibits L and M.

14. See Schedule of Insurance Policies Exhibit C.

This insurance does not apply:

(j) to bodily injury to any employee of the insured arising out of and in the course of his employment by the insured[.]

As the Court determined previously, such a coverage exclusion is valid and enforceable under Georgia law to bar actions against liability policies for bodily injuries to employees arising out of and in the course of their employment. *Williams v. Lumbermans Mut. Ins. Co.*, 164 Ga.App. at 437, 297 S.E.2d 345. Accordingly, as a matter of law, this exclusion effectively denies coverage on the BNA claims underlying this action, insofar as they pertain to bodily injury.

As to the claims for mental injury allegedly suffered by the BNA claimants, the Court recognizes that while such claims were not covered by American Mutual's policies, as the underlying event occurred outside of the covered period, such a bar to coverage does not exist with regard to general liability insurance afforded by General Accident, which continues to date. Thus, the Court must determine whether the term "bodily injury," as defined, encompasses the mental injury alleged in the underlying complaints.

As the Court noted in its order dated September 28, 1983 at 49, whether such allegations state a cause of action [15] is not the determining factor as to whether there is a duty to defend such a claim. Rather, because the injury occurred within the policy period, Order at 49, the Court must decide only whether the policy provided coverage for the alleged injury.

█ While the Court has not found a Georgia decision that addresses the issue of whether bodily injury includes mental injury for insurance purposes, Georgia law clearly states that " '[c]ourts have no more right by strained construction to make the policy more beneficial by extending the coverage contracted for than they would have to increase the amount of the insurance.' " *Cotton States Mut. Ins. Co. v. Crosby*, 244

Ga. 456, 457–58, 260 S.E.2d 860 (1979) (quoting *Cotton States Mut. Ins. Co. v. Falls*, 114 Ga.App. 812, 814, 152 S.E.2d 811 (1966)). "The definition offered in the policy, that is that 'bodily injury means bodily injury,' is a genuine attempt to explain words which need no explanation...." *Cotton States*, 244 Ga. at 459, 260 S.E.2d 860. "The natural, obvious meaning is to be preferred over any curious, hidden meaning which nothing but the exigency of a hard case and ingenuity of a trained and acute mind would discover." *St. Paul Fire & Marine Ins. Co. v. Cohen-Walker, Inc.*, 171 Ga.App. 542, 544, 320 S.E.2d 385 (1984).

Applying these principles to the present case, the Court observes that General Accident's policies define the term "bodily injury" as "bodily injury, sickness or disease," which language in no way suggests nonphysical harm to the person. *See Rolette County v. Western Cas. & Sur. Co.*, 452 F.Supp. 125, 130 (D.N.D.1978) and *United States Fidelity & Guaranty Co. v. Shrigley*, 26 F.Supp. 625, 628 (W.D.Ark.1939) for decisions reaching a similar conclusion. "In tort actions alleging mental suffering, the courts have consistently distinguished physical harm from mental and emotional harm, whether or not they recognize mental suffering as a separate cause of action." *Rolette*, 452 F.Supp. at 130. On the basis of these authorities and the law of Georgia generally, it is the decision of this Court that "bodily injury means bodily injury," not mental injury, for purposes of determining the extent of coverage afforded the insured under General Accident's general liability policies. Consequently, the Court concludes that General Accident had no duty to defend against claims for mental injury on the basis of the general liability policy provisions for bodily injury coverage.

General Accident also issued workmen's compensation and employers' liability insurance to the insured during the period from October, 1967 to date. The represent-

---

15. *Compare Silkwood v. Kerr-McGee Corp.*, 667 F.2d 908, 919 (10th Cir.1981) with *Devlin v.* *Johns-Manville Corp.*, 53 L.W. 2612 (6-11-85).

ative policy stipulated into evidence[16] shows that workers' compensation was provided under Coverage A, while employer's liability insurance was provided under Coverage B. Because no claim for workers' compensation was asserted in the tort claims underlying this action, no issue of coverage was triggered; accordingly, the Court will focus its attention on the coverage afforded by the employer's liability provisions, as affected by any pertinent exclusion.

According to the terms of the policy, the insurer is obligated "[t]o pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury by accident or disease, including death at any time therefrom[.]" In addition to this duty to indemnify its insured, the insurer is obligated further to

defend any proceeding against the insured seeking [insurance afforded by the policy terms] and any suit alleging such injury and seeking damages on account thereof, even if such proceeding or suit is groundless, false or fraudulent; but the company may make such investigation, negotiation and settlement of any claim as it deems expedient.

On the same page, the policy states under a conspicuous heading

This policy does not apply:

(e) under coverage B [Employer's Liability], to bodily injury by disease unless prior to thirty-six months after the end of the policy period written claim is made or suit is brought against the insured for damages because of such injury or death resulting therefrom[.]

Under the law as applied to the facts found in this case in reference to an identical exclusion pertaining to coverage under American Mutual's employer's liability provisions, see *supra* at 16–18, the Court concludes that this contractual period of limitation is both valid and enforceable, as excluding from coverage those claims made against the insured for bodily injury by disease caused by exposure to BNA, unless written claim is made or suit is filed before

thirty-six months after the end of the policy period.

As a further condition of coverage, General Accident included the following limiting language as part of the insuring agreement:

IV. *Application of Policy.* This policy applies only to injury (1) by accident occurring during the policy period, or (2) by disease caused or aggravated by exposure of which the last day of the last exposure, in the employment of the insured, to conditions causing the disease occurs during the policy period.

This language, though certainly not precise in this Court's opinion, is unambiguous, as effecting a further limitation on the thirty-six month period of limitation: a claim for bodily injury resulting from disease must be made within three years after the last date in the policy period in which a claimant could have been exposed to the conditions causing the disease, being BNA in this case. "There is no question that contractual limitations are valid and will be enforced by the courts." *Desai v. Safeco Insurance Co. of America,* 173 Ga.App. 815, 816, 328 S.E.2d 376 (1985) (citation omitted). Thus, as to the underlying tort claims, the last date of coverage would have been sometime in 1976, since the parties have agreed that BNA was cleaned out of the insured's premises by the end of 1973. As "[i]t is well settled under Georgia law that when the language of an insurance contract fixing the extent of the insurer's liability is unambiguous, a court must expound the contract as made." *Edwards v. Sharkey,* 747 F.2d 684, 687 (11th Cir.1984) (citations omitted). Consequently, giving effect to the terms, conditions, and exclusions expressed on the face of General Accident's employer's liability policy, the Court finds that claims made against the insured in 1981 for bodily injury by BNA disease were time barred.

Moreover, for the reasons stated previously in this discussion, *supra,* at 21–22, the Court finds that the mental injuries alleged in the underlying complaints were

---

**16.** See Schedule of Insurance Policies Exhibit M.

not elements covered under the terms of the employer's liability policy, as there is no reference in these terms to non-physical harm to the person. Accordingly, because there was no coverage under the policy as construed, either for bodily injury by disease or for mental injury, the Court concludes that General Accident had no duty to defend the insured against the underlying tort claims.

The Court is uncertain at this time, however, what effect the 1982 Letter Agreement has on this conclusion. The agreement was entered into by General Accident and its insured following a dispute as to policy coverage of the BNA claims filed in 1981. See *supra* at 4–6. The agreement acknowledges that claims had been made against the insured arising out of the exposure of the insured's employees to BNA (termed the "BNA claims") during the years January 1, 1967 through January 1, 1973 (period when BNA was used by the insured *and* General Accident was providing the insured employer's liability coverage). By the terms of the agreement, General Accident waived Exclusion (e) as it pertained to Coverage B—Employer's Liability coverage of the BNA claims, as described, maintaining in force all the other terms, conditions, exclusions, and limitations of the policies issued successively over the effected years. Finally, although the agreement states that all losses and legal expenses arising out of and in connection with the BNA claims would be covered under the terms of the agreement, only *paid* losses and *paid* allocated expenses attributable to the BNA claims would be adjusted. Finally, coverage under the agreement was made renewable upon its expiration in 1985.

This agreement loses its viability in light of *Newton,* which effectively held that the BNA claims were barred by the exclusive workers' compensation remedy. If the agreement was made with the understanding that coverage was afforded without prejudice to the insurer's right to seek declaratory relief on the coverage dispute, then that reservation of right is effected by *Newton.* Parenthetically, the Court notes that the insured did not bring a declaratory judgment action, and the agreement was

made pursuant to the dismissal, without prejudice, of such an action against it. However, the *Newton* litigation effectively served the same purpose as a declaratory judgment action, as the coverage dispute was finally resolved.

On the other hand, if the agreement was, in fact, an acceptance of liability by a primary insurer to pay under its employer's liability policy, albeit on an exclusive number of claims, then a duty to defend and indemnify the insured arose under the terms of the policy, as to those claims, in the amount of $100,000.00 per year. Specifically, the thirty-six month period of limitation would not be waived as to all BNA claimants, but only as to those who were exposed to BNA while General Accident was on the risk. This waiver is unambiguous, in conformance with the terms and conditions of the policy affected, and in accordance with Georgia law.

> The contract limitation of time to bring an action against the insurer in an insurance policy is valid and binding. However, 'such provision may be waived by the conduct of the insurance company in ... inducing the insured to believe that reliance on the policy provision will not be forthcoming.'

*Commercial Union Ins. Co. v. F.R.P. Co.,* 172 Ga.App. 244, 245–46, 322 S.E.2d 915 (1984).

In summary, the Court concludes that when the BNA claims underlying this action were filed in 1981, General Accident had no duty to defend those claims under either its general liability policy or its workmen's compensation and employers' liability policy with the insured. Depending on whether the 1982 Letter Agreement was entered into with a reservation of right or as an acceptance of liability, General Accident may have imposed on itself a duty to defend as to certain claims described in that agreement, which issue will be decided following receipt of necessary evidence.

### (2) Duty to Indemnify

It is the understanding of the Court that all claims underlying this declaratory judgment action either have been settled for individual amounts totalling $287,534.00, or will be dismissed on account of the Georgia

Supreme Court's declaration in *Newton.* As to both events, payment to a claimant either will have been made voluntarily by the insured, or not at all. From this perspective, the Court questions whether an actual case or controversy exists as to individual insurer's duty to indemnify, and whether adjudication of this issue would serve a useful purpose.

The Court finds that this problem was reached in *Allstate Ins. Co. v. Employers Liability Assur. Corp.*, 445 F.2d 1278 (5th Cir.1971), in which various excess insurers to a policy clause dispute made contributions toward settlement under an agreement between them that the contributions were made without prejudice to their rights to commence and defend a declaratory judgment action to determine their correlative rights and responsibilities under the insurance contracts at issue. When the action was brought, the court first faced the issue whether declaratory relief was the proper remedy to resolve the insurers' dispute, stating that "no action for declaratory relief will lie to establish an insurer's liability in a policy clause contest . . . until a judgment comes into being, since until judgment comes into being, the liabilities are contingent and may never materialize." *Id.* at 1281 (citing *American Fidelity & Casualty Co. v. Pennsylvania Threshermen & Farmers' Mutual Casualty Ins. Co.*, 280 F.2d 453 (5th Cir.1960)). The court determined under the facts before it that liability as to the defendant insureds effectively had been established, and a "judgment" had been rendered because the primary insurer, *without* reservation of right, had conceded "to all concerned" at the time of settlement that it owed coverage. *Id.* (emphasis added). The question for declaratory judgment was whether the voluntary payments paid *under reservation of right* by the excess carriers, whom the court described as subject to "secondary liability," *id.* at 1279, actually were owed by them.

Applying this reasoning to the facts found to date in the instant case, this Court observes that two sources of settlement exist from which one might determine a "judgment."

First, Synalloy dismissed a declaratory judgment action against General Accident, a primary insurer, from which action the 1982 Letter Agreement resulted. As stated previously, there is insufficient evidence on record from which the Court can determine what legal duty was owed by General Accident under that agreement, and correspondingly, how its provisions affected the duty owed under the primary coverage policy. Thus, the Court does not find at this time that a clear concession of liability was given to any party by General Accident from which a "judgment" might be determined; this hesitancy is supported by consideration that the action on which such a "judgment" might be based was dismissed without prejudice.

Second, Synalloy either on its own account or by authority of one or more of its insurers entered into a number of settlements on the underlying tort claims. However, while that fact may evidence a concession of liability by Synalloy, no formal tender of evidence has been made to establish that an agreement existed between Synalloy and its insurers to pay the cost of these settlements.[17] Unless such evidence is offered prior to final disposition of this case, Synalloy will have to seek contribution under some form of remedy other than as a defendant in a declaratory judgment action.

In conclusion, this discussion shall serve as adequate notice to the parties as to the Court's position with regard to superimposing declaratory relief on duties allegedly owed by insurers, under circumstances where voluntary payment already has been made, on questioned authority, to the claimants affected. The Court anticipates receiving evidence at trial which will clarify and assist in finally disposing of these issues, as addressed.

In that connection, unless a party is heard to show cause why American Mutual should not be dismissed from this action, the Court shall so dismiss American Mutu-

---

17. Again, the Court reserves judgment on the effect of the 1982 Letter Agreement with General Accident.

al, with prejudice, at the conclusion of the trial convening on July 1, 1985.

## B. The Excess Insurers

Until the Court is presented with evidence from which it can render a judgment on the duties owed by the primary insurers relating to either the defense or settlement, or both, of the underlying tort claims, no purpose would be served by a determination of which of the excess insurers, if any, owed either a duty to defend or indemnify the insured under the policies at issue.

## IV. *Conclusion*

The Court sees an end to this litigation. By this Order, the Court has decided issues so as to set the boundaries of any declaratory relief to be granted in this action. Many more issues remain undecided, but this ruling should indicate to the parties what direction the Court is taking to resolve those issues expediently, and what evidence is needed along the way.

Trial in this matter will convene on July 1, 1985, at 9 a.m.