941 F.2d 1206
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
The HOME INSURANCE COMPANIES, Plaintiff-Appellant,
v.
P & P CONTRACTORS, INCORPORATED, Allstate Insurance Company,
Federal Kemper Insurance Co., Defendants-Appellees.
 No. 90-2440.
 United States Court of Appeals, Fourth Circuit.
 Argued May 7, 1991.
Decided Aug. 22, 1991.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. Joseph C. Howard, District Judge. (CA-89-1692-JH)
 Lee Hedgecock Ogburn, Kramon & Graham, P.A., Baltimore, Md., for appellant.
 Leslie W. Gawlik, Huber & Lutche, Baltimore, Md. (Argued), for appellees; George L. Huber, Jr., William J. Kobokovich, Jr., Huber & Lutche, Baltimore, Md., on brief.
 D.Md.
 REVERSED AND REMANDED.
 Before PHILLIPS and WILKINSON, Circuit Judges, and ELIZABETH V. HALLANAN, United States District Judge for the Southern District of West Virginia, sitting by designation.
 OPINION
 PHILLIPS, Circuit Judge:
 
 
 1
 This is an appeal from a declaratory judgment action in which the court rejected the request of Home Insurance to redistribute the burdens of an insurance settlement. Because we conclude that the district court incorrectly assigned the burden of proof on one issue, we reverse and remand.
 
 
 2
 * In 1974, the Village of Cross Keys, a division of the Rouse Company, contracted with Glen Construction Company, Inc. to construct Harper House Condominiums. Glen Construction, in turn, hired P & P Contractors, Inc. as a subcontractor to construct the core and interior surface of the curtain wall of these Baltimore condominiums. P & P did in fact construct this wall and by September 1976, Harper House was certified as substantially complete.
 
 
 3
 Within two weeks of substantial completion, however, the Rouse Company became aware that the building leaked. By November of 1976, Rouse learned of certain defects in the construction of the exterior walls, including stress cracks in the brick and mortar of the wall. Two months later, Rouse discovered large breaks in the exterior masonry of Harper House. An engineering firm was retained to determine the cause of the leaks and in a March 1980 report, the firm concluded that the leaks were caused by construction defects in the building's exterior walls. P & P was responsible for some of these defects. Similarly, another engineering report prepared in late 1980 for the Council of Unit Owners of the Harper House condominium indicated that P & P was at least partially responsible for the damage to the building.
 
 
 4
 In May 1981, the Council of Unit Owners of Harper House filed an amended declaration in the Circuit Court for Baltimore City against, among others, Glen Construction Company, Inc., seeking damages for defective design and construction of Harper House. Glen Construction, in turn, filed a third party complaint against P & P for indemnification.
 
 
 5
 P & P Contractors maintained insurance during all times relevant to this controversy. It was insured under an Allstate policy from June 21, 1974 through June 20, 1977. From June 21, 1977 through June 20, 1978, P & P was insured by Kemper. Home Insurance provided coverage from June 21, 1978 through June 20, 1979. Finally, Allstate provided coverage through the remaining time relevant to this litigation.
 
 
 6
 In June 1989, Home Insurance filed this declaratory judgment action against Allstate, Kemper, and P & P in the United States District Court for the District of Maryland. Home sought a declaration that it had no obligation to indemnify P & P because (a) the Harper House claim arose outside Home's policy period; and (b) the claim was excluded by the "business risk" exclusion in the Home policy. Home also requested the court to declare that the claim arose during the period of coverage of one of the other policies, and to find that one of the other companies was obligated to reimburse Home for its contribution to the settlement. On July 20, 1989 and September 7, 1989, respectively, Allstate and Kemper cross-claimed and counter-claimed on similar grounds, seeking indemnification from each other.
 
 
 7
 In August 1989, these three insurance companies, as well as P & P itself, joined together and settled the claims against P & P for a total of $350,000. The contributions were as follows: P & P paid $50,000, Kemper paid $25,000, Home paid $100,000, and Allstate paid $175,000. In addition to settlement payments, Home and Allstate shared the cost of defending P & P against the Harper House claim. The total cost of the defense was $98,205, of which $70,424 was borne by Home and $27,781 was borne by Allstate.
 
 
 8
 On November 28, 1989, the three insurers dismissed their claims against P & P. As trial was about to begin, Kemper settled its claims with the other parties. On March 16, 1990, Allstate and Home went to trial on the declaratory action. Numerous stipulated exhibits were offered; no live testimony was presented. On May 31, 1990, the court ruled that P & P's defective work was performed during the Allstate policy period, but because the court could not determine what portion of the settlement went to repair defective work performed by P & P itself--damages specifically excluded by Allstate's policy--the court could not determine the extent, if any, of Allstate's liability to Home for Home's contribution to the overall settlement. The court therefore denied recovery to all insurers, upholding the distribution of liability as specified in the settlement. Home now appeals.
 
 II
 
 9
 Before addressing the appellant's challenge to the district court's ruling, we first consider Allstate's claim that this action was appropriately dismissed on the grounds that no equitable subrogation claim is available to Home. Allstate argues that Home's declaratory judgment action is essentially one seeking equitable subrogation of P & P's claims. It then contends that in any equitable subrogation action, the payments by the subrogee must be involuntary and must provide payment in full, on behalf of the subrogor, to the creditor. Concluding that Home's payments were both voluntary, and in only partial satisfaction of the claims against P & P, Allstate argues that an equitable subrogation claim is unavailable to Home.
 
 
 10
 Interesting as these arguments may be, we think they miss the point. This is not an equitable subrogation action. When Home filed for declaratory judgment, and when Allstate and Kemper followed suit, these insurers were seeking the court's assistance in determining the nature and extent of their respective liabilities under the terms of their respective insurance contracts. In this the parties sought relief not pursuant to the equitable powers of the court, but rather pursuant to the plain terms of their contracts. The court was asked to determine when P & P performed the construction that was ultimately determined to be inadequate, and it was asked to determine which insurance contract provided coverage during that particular time period.
 
 
 11
 This plainly contractual dispute is not a classic equitable subrogation claim such as was presented in Government Employees Ins. Co. v. Taylor, 310 A.2d 49 (Md.1973). In that action, technically styled as a dispute between the insured and the insurer, the court considered what was at root a dispute between the Government Employees Insurance Company (GEICO) and the Unsatisfied Claim and Judgment Fund Board ("the Fund"). The insureds were involved in an automobile accident. When GEICO refused to pay the claims, arguing that the policy had been canceled, the victims of the accident notified the Fund of their situation. The Fund then decided to pursue GEICO through a declaratory action, filed on behalf of the insureds--the Taylors. The Fund ultimately prevailed in the litigation and then sought fees for costs expended on behalf of the Taylors. GEICO argued that the Fund could not sue GEICO since the Fund had not been contractually bound to expend money on behalf of the Taylors. The court ruled that although the Fund had not been contractually required to expend the funds, it had done so to protect its interests and it was therefore equitably entitled to subrogate the Taylors' claims.
 
 
 12
 The case at bar is completely different from Government Employees Ins. Co. Here, the insurance companies are suing to protect their own rights under contract. The money they have expended on settlement was spent in fulfillment of their expected responsibilities under contract. We need not consider whether the claims fail under a theory of equitable subrogation because they arise in contract and are properly before the court.
 
 III
 
 13
 The critical issue is whether the court applied the appropriate burdens of proof in determining liability and damages. It may well be dispositive because of the difficulties of proof faced by either party on the decisive issue.
 
 
 14
 The district court made a blanket ruling on the issue of burden of proof, holding that because Home filed the action, it bore the burden of proof on all issues. We hold that while the court was correct in placing the burden upon Home on the issue of which policy was in effect at the time the damage occurred, it erred in requiring Home to bear the burden of proof on the issue of whether the particular damages were excludable under the policy.
 
 
 15
 It appears that no Maryland case has addressed the question whether the insured or the insurer bears the burden of proving that a claim is within a policy exclusion. However, the general rule is that the insured (here, in effect, Home) bears the burden of proving only that the claim is within the broad body of occurrences covered by a policy. Once the claim is within the general language, the insurer (here, in effect, Allstate) bears the burden of proving that the claim falls within an exclusion. See, e.g., M.H. Lipiner & Son v. Hanover Ins. Co., 869 F.2d 685, 687 (2d Cir.1989); Allstate Ins. Co. v. Best, 728 F.Supp. 1263, 1266 (D.S.C.1990); Continental Cas. Co. v. Synalloy Corp., 667 F.Supp. 1550, 1555 (S.D.Ga.1985). We believe that Maryland would follow these traditional allocations of the burden of proof.
 
 
 16
 The initial question in the case was that of who was providing coverage on behalf of P & P at the time the damage at issue occurred. The district court held, appropriately assigning the burden of proof to Home, that Allstate coverage was in force during the time relevant to this suit. Thus, unless the incident was specifically excluded by the terms of the policy, Home's claim against Allstate must succeed.
 
 
 17
 Included in Allstate's policy with P & P was a clause known as a "business risk" exclusion. While the policy covered damages caused by an occurrence, namely:
 
 
 18
 an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the Insured, the policy specifically excluded damage to the actual work originally performed by P & P. Clause "z" of the policy stated that the insurance applied to property damage except:
 
 
 19
 with respect to the completed operations hazard and with respect to any classifications stated below as "including completed operations," to property damage to work completed by the Named Insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith.
 
 
 20
 Thus, this policy did not cover any damage done to P & P's own work on the curtain wall.
 
 
 21
 The court ruled that, since Home could not prove what--if any portion of the $350,000 total settlement was paid to cover "business risk" damage, it could not prove what portion--if any--of the $350,000 Allstate was liable for. The court's conclusion manifestly rested on the assumption that Home bore the burden of proof on the question of whether P & P's negligent conduct resulted in damage to its own work, to the work of others, or to both. The problem with this analysis is that the only way Allstate would not be liable for the whole amount of the damages would be if the particular damage for which the parties settled was excluded under the business risk exclusion. To the extent that Allstate seeks to resist liability through invocation of an exclusion, it must bear the burden of proof. In order to succeed in this litigation, Allstate must establish what portion, if any, of Home's $100,000 contribution to the settlement was used to settle claims excluded under Allstate's business risk exclusion.
 
 
 22
 In concluding, we hold that the court erred in holding Home liable for all of its contribution to the settlement. If the court's judgment was based solely on the fact that the evidence was inadequate to decide, one way or the other, whether the damages were excluded under the business risk exclusion, Home is entitled to judgment in its favor. Since we cannot be certain how the court would have ruled had it assigned the burden of proof to Allstate, however, we remand for reconsideration of whether the damages Home paid on behalf of P & P were excluded under the terms of Allstate's policy.
 
 
 23
 REVERSED AND REMANDED.
 
 
 24
 WILKINSON, Circuit Judge, and ELIZABETH V. HALLANAN, District Judge, joined.